712 S.E.2d 457

**The STATE, Respondent,**

v.

**Lawrence PHILLIPS, Appellant.**

**No. 4833.**

Court of Appeals of South Carolina.

Heard April 5, 2011.

Decided May 25, 2011.

Rehearing Denied Aug. 4, 2011.

408

Appellate Defenders M. Celia Robinson and Breen Stevens, both of Columbia, for Appellant.

Attorney General Alan Wilson, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, and Assistant Attorney General Deborah R.J. Shupe, all of Columbia; and Solicitor Issac McDuffie Stone, III, of Beaufort, for Respondent.

CURETON, A.J.

Lawrence Phillips appeals his conviction and sentence for second-degree arson, arguing the trial court erred in refusing to direct a verdict of acquittal and in sentencing him to life imprisonment without the possibility of parole (LWOP). We affirm the refusal to direct a verdict but reverse the LWOP sentence and remand for resentencing.

## FACTS

Phillips lived in a double-wide mobile home he rented from James Cook. On September 14, 2007, Phillips packed his belongings in his car and drove away. Within minutes, the mobile home burned.

Phillips was indicted and tried for second-degree arson. The State notified him it intended to seek a sentence of LWOP based upon a 1979 conviction from South Carolina for "burning" and a 1985 conviction from Florida for second-degree burglary. Phillips had pled guilty to the 1979 offense and received a youthful offender sentence. Prior to trial, Phillips moved to "disqualify" the State's LWOP notice. He argued that neither of the listed offenses was a serious or a most serious offense for sentence enhancement purposes. The State submitted a copy of the 1979 indictment, which stated Phillips burned "a building, the property of Laurens County School District # 56." The trial court determined the 1979 conviction for burning contained the same elements as second-degree arson, a serious offense. Furthermore, the trial court found the 1985 second-degree burglary conviction from Florida constituted a serious offense. Accordingly, the trial court did not preclude the State from pursuing an LWOP sentence.

Phillips was tried in July 2008. Lori Joslin, Phillips's next-door neighbor, recalled that at approximately 7:00 a.m. on September 14, 2007, Phillips visited her to retrieve a rifle she had stored for him and to leave a lawnmower at her home. According to Joslin, Phillips stated he was leaving town and wondered aloud how his house would look in flames. Joslin watched as Phillips packed many of his personal belongings into his car and left. She did not believe he intended to return. Within thirty minutes after their conversation, Joslin looked out her window and saw flames and smoke coming from Phillips's home. Joslin called 911 and reported the fire.

Emergency personnel arrived and extinguished the fire. A paramedic who responded to the call testified he found two fires inside the home. The South Carolina Law Enforcement Division (SLED) investigated the fires and determined they had been intentionally set, originating in the living room and the master bedroom.

Phillips's sister, Rhonda Wilson, testified she went to her brother's house on the day it burned to feed his animals. She added that Phillips regularly asked her to feed his animals when he went out of town. Wilson testified that when she arrived, the fire had been extinguished, but she found her brother's pit bull, rabbits, and quail at the house. While there, Wilson retrieved their father's golf clubs, a rake, a shovel, a garden hose, and some gas cans.

Phillips moved the trial court to direct a verdict in his favor, arguing that because he left the house without intending to return, the house did not qualify as a dwelling. According to Phillips, arson in the third degree, rather than in the second degree, was the appropriate charge because the house was an unoccupied building instead of a dwelling. The trial court denied the motion and submitted the issue to the jury. However, the trial court charged the jury on both second-degree and third-degree arson.

Shortly after beginning deliberations, the jury sent the trial court a note asking for the definition of reasonable doubt and whether someone must actually live in a house for it to be considered a dwelling. The trial court provided the jury with a written copy of the jury charge. The jury returned a verdict of guilty of second-degree arson. Based upon the 1979 and 1985 convictions for burning and second-degree burglary, respectively, the trial court sentenced Phillips to LWOP. This appeal followed.

## STANDARD OF REVIEW

"In criminal cases, the appellate court sits to review errors of law only." *State v. Baccus,* 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006). Thus, an appellate court is bound by the trial court's factual findings unless they are clearly erroneous. *Id.*

## LAW/ANALYSIS

### I. Directed Verdict on the Charge of Second–Degree Arson

Phillips first argues the trial court erred in refusing to direct a verdict on the charge of second-degree arson. He

contends that when he departed from the home, it no longer qualified as a dwelling house. We disagree.

## A. Directed Verdict

■■■ "A defendant is entitled to a directed verdict when the State fails to present evidence of the offense charged." *State v. Heath,* 370 S.C. 326, 329, 635 S.E.2d 18, 19 (2006). A trial court considering a motion for directed verdict is concerned with the existence or nonexistence of evidence, not with its weight. *State v. Weston,* 367 S.C. 279, 292, 625 S.E.2d 641, 648 (2006). When reviewing the denial of a directed verdict, the appellate court views the evidence and all reasonable inferences in the light most favorable to the State. *Id.* An appellate court may reverse the trial court's denial of a directed verdict motion only if no evidence supports the trial court's ruling. *State v. Gaster,* 349 S.C. 545, 555, 564 S.E.2d 87, 92 (2002). If any direct evidence or substantial circumstantial evidence reasonably tends to prove the guilt of the accused, this court must find the case was properly submitted to the jury. *Weston,* 367 S.C. at 292–93, 625 S.E.2d at 648.

## B. Arson Statutes

■■ In 2007, the South Carolina Code defined second-degree arson as follows:

A person who wilfully and maliciously causes an explosion, sets fire to, burns, or causes to be burned or aids, counsels, or procures the burning that results in damage to a dwelling house, church or place of worship, a public or private school facility, a manufacturing plant or warehouse, a building where business is conducted, an institutional facility, or any structure designed for human occupancy to include local and municipal buildings, whether the property of himself or another, is guilty of arson in the second degree . . . .

S.C.Code Ann. § 16–11–110(B) (Supp.2007).

For the purposes of the arson and burglary statutes, a "dwelling house" is "any house, outhouse, apartment, building, erection, shed or box in which there sleeps a proprietor, tenant, watchman, clerk, laborer or person who lodges there with a view to the protection of property." S.C.Code Ann.

§ 16–11–10 (2003). In addition, "all houses, outhouses, buildings, sheds and erections which are within two hundred yards of [any dwelling house] and are appurtenant to it" constitute parcels of the dwelling house. *Id.*

We affirm the trial court's refusal to direct a verdict of acquittal on the charge of second-degree arson because the evidence adduced at trial required that the issue be submitted to the jury. Phillips contends his abandonment of the mobile home prior to Joslin's observing the fire changed its status as a dwelling. This argument is meritless. In *State v. Glenn,* Glenn and her husband purchased and lived in a mobile home until her husband died. 297 S.C. 29, 30, 374 S.E.2d 671, 671 (1988). After holding a wake for her husband in the mobile home, Glenn learned the home might be repossessed. *Id.* at 30–31, 374 S.E.2d at 671. She announced to family members that the home would burn before she allowed it to be repossessed. *Id.* at 31, 374 S.E.2d at 671. A few days after the funeral, Glenn stopped by the home and retrieved her Bible; shortly thereafter, a witness found the home in flames. *Id.* at 31, 374 S.E.2d at 671–72. Glenn was tried for second-degree arson and sought a directed verdict based on her contention the mobile home was not a "dwelling" because no one lived there at the time of the fire. *Id.* at 31, 374 S.E.2d at 672. Our supreme court affirmed the denial of a directed verdict, holding that despite Glenn's departure and removal of her belongings, "ample evidence existed that ... Glenn did not vacate her mobile home but left with the intention of returning." *Id.* at 32, 374 S.E.2d at 672.

In the case at bar, Phillips avers he "left" the mobile home on the morning of the fire, intending never to return. He retrieved his gun from Joslin's care and loaded his car with most of his belongings. However, he left his lawnmower with Joslin, his father's golf clubs in his mobile home, and several live animals at his home. Phillips's leaving his lawnmower with Joslin was an ambiguous act that could support either Phillips's abandonment of the home or his intent to return.[1]

---

1. The record is notably bereft of evidence Phillips took steps to vacate the property permanently. For example, no evidence indicates Phillips removed furniture from the home, discontinued any utilities to the mobile home, secured another dwelling for himself, provided a for-

Leaving his father's golf clubs and his rake, shovel, garden hose, and gas cans in the mobile home would suggest Phillips intended to return only if he valued those items. Certainly, his sister did; she retrieved them after the fire. However, Phillips's leaving his dog, rabbits, and quail at the mobile home is evidence he intended to return as he had done often before. Wilson testified her brother regularly asked her to feed his animals when he went out of town, and she went to his house the day of the fire to feed them.

Viewed together, this evidence supports a finding that Phillips "left with the intention of returning," certainly to care for his animals and possibly to resume living in the home. *See id.* Consequently, the trial court did not err in refusing to direct a verdict of acquittal on the issue of second-degree arson.

## II. LWOP

■ Phillips next argues the trial court erred in sentencing him to LWOP based upon his 1979 conviction.

### A. Sentence Enhancement

In South Carolina, a trial court must sentence a person convicted of a serious offense to LWOP if he has two or more prior convictions for: "(1) a serious offense; (2) a most serious offense; (3) a federal or out-of-state offense that would be classified as a serious offense or most serious offense under this section; or (4) any combination of the offenses listed in items (1), (2), and (3) above." S.C.Code Ann. § 17–25–45(B) (Supp.2010). A "serious" offense is "any offense which is punishable by a maximum term of imprisonment for thirty years or more which is not referenced in subsection (C)(1)." S.C.Code Ann. § 17–25–45(C)(2) (Supp.2010). Second-degree arson is listed as a serious offense. *Id.* Third-degree arson is not. *Id.*

■ In seeking an LWOP sentence based upon section 17–25–45, the State bears the burden of establishing the defendant's prior convictions for serious or most serious offenses. *State v. Johnson,* 350 S.C. 543, 547–48, 567 S.E.2d 486, 488

---

warding address to the post office, or notified his landlord of his intent to vacate the property.

(Ct.App.2002). When a prior conviction is for an offense not contemplated by section 17–25–45, the trial court should examine the elements of the offense and determine whether they are equivalent to any current offenses classified as "serious" or "most serious." *State v. Washington,* 338 S.C. 392, 397–98, 526 S.E.2d 709, 711 (2000).

### B. Burning and Second–Degree Arson

In 1979, the South Carolina Code contained a provision addressing the offense of burning:

Any person who (a) wilfully and maliciously sets fire to or burns or causes to be burned or (b) aids, counsels or procures the burning of:

(1) Any barn, stable, garage, or other building, whether the property of himself or of another, not a parcel of a dwelling house;

(2) Any shop, storehouse, warehouse, factory, mill or other building, whether the property of himself or of another; or

(3) Any church, meetinghouse, courthouse, workhouse, school, jail or other public building or public bridge;

Shall, upon conviction thereof, be sentenced to the Penitentiary for not less than one nor more than ten years.

S.C.Code Ann. § 16–11–120 (1976) (repealed 1982).

This court's opinion in *In Re Terrence M.,* 317 S.C. 212, 214 n. 1, 452 S.E.2d 626, 627 n. 1 (Ct.App.1994), explained how the General Assembly restructured the arson statutes in 1982:

Prior to the 1982 Act, South Carolina had two arson statutes relating to buildings: (1) S.C.Code Ann. § 16–11–110 (1976) (later amended), which made it unlawful to wilfully and maliciously set fire to a dwelling house or associated building; and (2) S.C.Code Ann. § 16–11–120 (1976) (repealed), which made it unlawful to wilfully and maliciously set fire to other kinds of buildings. These statutes did not describe the offense in terms of degrees of arson.

The 1982 Act amended § 16–11–110 to set forth three degrees of arson. The 1982 Act added the offense of first degree arson under § 16–11–110(A) and recodified the earli-

er version of § 16–11–110 as second degree arson under § 16–11–110(B) with the same punishment of two to twenty years. It repealed § 16–11–120 but essentially recodified it as § 16–11–110(C) (third degree arson) with the same punishment of one to ten years. The distinguishing difference between subsections (B) and (C) is whether the building was a "dwelling house" or associated building, this being the same distinguishing difference that existed between the former version of § 16–11–110 and the repealed version of § 16–11–120.

In 2007, the South Carolina Code continued to define arson in terms of three degrees. First-degree arson resulted, "either directly or indirectly, in death or serious bodily injury to a person" and mandated a sentence of between ten and thirty years' imprisonment. S.C.Code Ann. § 16–11–110(A) (Supp. 2007). Second-degree arson applied to buildings "designed for human occupancy," including dwellings:

A person who wilfully and maliciously causes an explosion, sets fire to, burns, or causes to be burned or aids, counsels, or procures the burning that results in damage to a dwelling house, church or place of worship, a public or private school facility, a manufacturing plant or warehouse, a building where business is conducted, an institutional facility, or any structure designed for human occupancy to include local and municipal buildings, whether the property of himself or another, is guilty of arson in the second degree. . . .

§ 16–11–110(B). A conviction of second-degree arson carried a sentence of five to twenty-five years' imprisonment. *Id.* Third-degree arson addressed "damage to a building or structure other than those specified in subsection (A) or (B)." S.C.Code Ann. § 16–11–110(C) (Supp.2007). The sentence for third-degree arson was from one to ten years' imprisonment. *Id.*

We reverse the trial court's determination that Phillips's 1979 conviction for burning contains the same elements as the 2007 second-degree arson statute and therefore qualifies as a serious offense for sentence-enhancement purposes. *See Washington,* 338 S.C. at 397–98, 526 S.E.2d at 711 (requiring a court considering sentence enhancement based upon an archa-

ic offense not listed in section 17–25–45 to compare the elements with modern offenses). The 1982 restructuring of the arson statutes resulted in the repeal of the former burning statute, but the offense of burning was effectively revived as third-degree arson. *Terrence M.,* 317 S.C. at 214 n. 1, 452 S.E.2d at 627 n. 1. However, by 2007, some of the elements of third-degree arson had been elevated to second-degree arson. Other elements remained in third-degree arson only. We find the State failed to prove Phillips was convicted of those elements belonging to second-degree arson. *See Johnson,* 350 S.C. at 547–48, 567 S.E.2d at 488 (placing on the State the burden of establishing convictions used for sentence enhancement purposes).

In 1979, Phillips was convicted of "burning," in which a person (1) willfully and maliciously (2) sets fire to (3) any building other than a dwelling, including schools and publicly owned buildings. *See* § 16–11–120. In 2007, all three degrees of arson included the first two elements of the offense, willful and malicious burning. S.C.Code Ann. § 16–11–110 (Supp. 2007). However, the third element, identifying the type of building burned, had changed. The statute in effect in 1979 distinguished between dwellings and non-dwellings and established a lighter penalty for offenses against non-dwellings, including places of business. § 16–11–120. By 2007, schools, churches, businesses, and any other "structure designed for human occupancy" received the same protection as dwellings under the second-degree arson statute. § 16–11–110(B). Consequently, due to the broadened scope of the second-degree arson statute, a conviction for burning a building owned by the local school district could qualify as a serious offense analogous to second-degree arson, but only if the affected building were one designed for human occupancy.

The State contends the term "public or private school facility" contained in the 2007 version of section 16–11–110(B) is sufficiently broad to encompass any building owned by a school district. Although the applicable statutes do not define this term, we find the plain meaning instructive. Webster's dictionary defines a "facility" as "a building . . . that facilitates or makes possible some activity." Webster's New World College Dictionary 508 (4th ed.2008). A "public or private school facility," then, is a building that makes possible public

or private education. It does not necessarily include every structure a school district may own. At Phillips's sentencing, the State presented only the 1979 indictment in support of its request for an LWOP sentence. In doing so, it failed to present evidence that the building Phillips burned in 1979 was a school facility. *See Johnson*, 350 S.C. at 547–48, 567 S.E.2d at 488 (noting the State bears the burden of establishing convictions used for sentence enhancement purposes).

Having determined the State failed to prove Phillips burned a school facility, this court next addresses whether the State proved Phillips's 1979 conviction was for burning a "structure designed for human occupancy." The 1979 indictment states Phillips burned "a building, the property of Laurens County School District # 56." In addition to schools and office buildings, school districts may own structures such as storage sheds, garages for school vehicles, and abandoned buildings located on district-owned property slated for future development. While schools and office buildings clearly are designed for human occupancy, the same cannot be said for sheds, garages, and abandoned buildings. Again, the evidence in the record does not indicate which type of building Phillips burned to merit the 1979 conviction. Consequently, we must find the State did not bear its burden of proof, and the trial court erred in holding Phillips's 1979 conviction was for a serious offense.

## CONCLUSION

We conclude the mobile home in which Phillips lived qualified as a dwelling under the applicable law. Consequently, we affirm the trial court's refusal to direct a verdict of acquittal as to second-degree arson.

Additionally, we find the State failed to establish Phillips's 1979 conviction was for a serious offense such as second-degree arson. Therefore, we reverse the trial court's imposition of a sentence of LWOP and remand for resentencing. Accordingly, the decision of the trial court is

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

FEW, C.J., and KONDUROS, J., concur.