75169. TURNIPSEED v. THE STATE.
(367 SE2d 259)

</div>

BEASLEY, Judge.

Turnipseed appeals his sentence and conviction for felony involuntary manslaughter, OCGA § 16-5-3 (a), based on the underlying misdemeanor of reckless conduct, OCGA § 16-5-60, in this case in which a child was killed by three pit bull terriers owned and maintained by Turnipseed.

1. The first enumeration is that the trial court erred in denying the general demurrer challenging the indictment on the grounds that it failed to state an offense under Georgia law and failed to allege the commission of an unlawful act as required by OCGA § 16-5-3.

Appellant maintains that the offense of reckless conduct cannot be used as the underlying unlawful act for a conviction of felony involuntary manslaughter because it would render meaningless subsection (b), the misdemeanor grade of involuntary manslaughter involving the commission of a lawful act in an unlawful manner. He argues that any conviction under the misdemeanor portion of OCGA § 16-5-3 represents the commission of some act in a criminally negligent or criminally reckless manner; that reckless conduct is the *sine qua non*

of misdemeanor involuntary manslaughter and therefore if engaging in reckless conduct is the only predicate required for a conviction under subsection (a), then every misdemeanor manslaughter offense also represents a felony involuntary manslaughter offense. He further argues that felony involuntary manslaughter requires that a defendant *intentionally* commit the underlying act, so that if recklessness is all that is charged, the element of criminal intent is eliminated. Finally, he urges that the indictment failed to identify what unlawful act was committed which led to the death, because merely charging that the death resulted from engaging in reckless conduct sets out a misdemeanor offense and no more.

The indictment tracks the language of OCGA §§ 16-5-60 and 16-5-3 (a) and therefore sufficiently states the offense with which defendant was charged. OCGA § 17-7-4; *Moran v. State*, 170 Ga. App. 837, 841 (2) (318 SE2d 716) (1984).

The indictment is not defective, as appellant urges, on the ground that felony involuntary manslaughter is predicated on the underlying offense of reckless conduct. Reckless conduct which includes the element of criminal intent is a misdemeanor and satisfies the requirement under OCGA § 16-5-3 (a) of "an unlawful act other than a felony." Appellant fails to recognize the criminal intent aspect of the underlying offense, the unlawful act of "conscious disregard" delineated in the statute and described in the indictment. See *Lewis v. State*, 180 Ga. App. 369, 371 (3) (349 SE2d 257) (1986).

It likewise is not the law that if the only unlawful act charged is reckless conduct, the charge must be misdemeanor involuntary manslaughter. A charge of violation of OCGA § 16-5-3 (b) is not appropriate under such circumstances because criminal reckless conduct is not a lawful act within the context of OCGA § 16-5-3 (b). *Saylors v. State*, 251 Ga. 735, 737 (3) (309 SE2d 796) (1983); *Crawford v. State*, 245 Ga. 89, 91 (3) (263 SE2d 131) (1980).

The indictment was not demurrable on the grounds urged.

2. Appellant contends that the evidence was insufficient to sustain a conviction for felony involuntary manslaughter, specifically, that an unlawful act of criminal reckless conduct was not proved. The reckless conduct charged was, in short, "keeping" the terriers and "[omitting] to adequately secure" them.

He maintains that at the time of the victim's death there was no law in Georgia forbidding the ownership of pitbull terriers or which expressly outlawed any specific act committed by him and therefore, that none of his actions constituted criminal reckless conduct. He points to the civil liability of pet owners in the law of negligence as persuasive in determining that his conduct was not criminal, to wit, principles of foreseeability, "one bite," and vicarious liability.

To begin with it is error to inject rules governing civil liability

into a situation of assessing criminal responsibility. See *Edmonds v. State*, 98 Ga. App. 827 (1) (107 SE2d 286) (1959); *Cain v. State*, 55 Ga. App. 376, 379 (1) (190 SE 371) (1937). Rather, the State's obligation was to show that Turnipseed consciously disregarded a substantial and unjustifiable risk that his conduct would cause harm or endanger the safety of another person and that such disregard constituted a gross deviation from the standard of care which a reasonable person would exercise in the situation. OCGA § 16-5-60; *Horowitz v. State*, 243 Ga. 441 (254 SE2d 828) (1979).

While it is true that at the time of the attack on the child, there was no state law specifically forbidding the ownership of pitbull terriers or specifically outlawing any one of Turnipseed's isolated acts regarding the dogs, this did not preclude the jury from finding that the acts of keeping the dogs in the circumstances evidenced, and leaving them unguarded, all with the knowledge of past incidents, built up to reckless conduct on this occasion. Such is a crime. OCGA § 16-5-60.

The evidence, construed so as to uphold the verdict, *Rhodes v. State*, 168 Ga. App. 10, 11 (1) (308 SE2d 33) (1983), showed that for a number of years prior to the fatal attack on Billy Gordon, Turnipseed owned and raised pitbull terriers in his home in a residential area where there were many children. Turnipseed had heard about how the breed "hurt kids and stuff, . . . heard about how pits jump on kids and bite them on the heads and stuff"; he knew that others had complained about the breed. Turnipseed liked the dogs, which were his favorite breed, because of the way they acted by running around his home, bumping into walls, lifting a two-by-four piece of wood and protecting the house.

He felt the dogs did not have to be trained to be protective, that they were born that way and that "[a]ll you got to do is keep them off from around people and they won't like nobody but the people who feed them." Turnipseed stated that he tried to keep the dogs away from other people. He strapped weights to the dogs and ran them to build up their chests and their legs. He had been told by his neighbors, policemen, and animal control officers that his dogs were a problem. Turnipseed knew that his dogs had been getting out of his house and outside of his yard and how they were accomplishing this. The animals were able to escape the house on numerous instances because of missing or broken doors, windows, etc. Turnipseed thought his dogs were capable of jumping a seven-foot fence. He never put a lock on the fence gate. The dogs fought with each other and Turnipseed knew that they had chased people in the neighborhood including children and had tried to kill another animal. He also knew that two of his dogs had been shot and killed by police officers because the dogs had attacked the officers. Turnipseed himself shot one of the dogs for trying to bite.

On November, 21, 1986, four-year-old Billy Gordon, Jr. and his eleven-year-old cousin were walking from the cousin's house to the home of Turnipseed's next-door neighbor, Ms. Bryant, who sold candy to the local children. They did not go on Turnipseed's property but walked through a path in the woman's backyard. The cousin noticed Turnipseed's dogs scratching at his door and then that they were coming out of Turnipseed's house through the open gate in Turnipseed's yard. The children tried to get to Bryant's house, but they couldn't make it so they laid down and the cousin told Billy to be still, "trying to play dead." The three dogs, named Caesar, Rock Jaw, and Raw Dog, dragged the little boy away from his cousin and then chased the cousin, who managed to run to Bryant's house. Bryant heard screaming, opened her door, the cousin fell in, and Bryant saw that the child was being chased by one of the dogs which had blood dripping on its face. Bryant kicked the dog back out of her door and from her window she could see the dogs pulling at Billy, who was not moving. The boy's death resulted from severe injuries inflicted by the dogs.

The evidence was sufficient to enable any rational trier of fact to find Turnipseed guilty of felony involuntary manslaughter, OCGA § 16-5-3 (a), based on reckless conduct, OCGA § 16-5-60, beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See *Miller v. State*, 179 Ga. App. 217 (345 SE2d 909) (1986), which held that a defendant's failure to keep his dogs under control and allowing them to roam freely after he knew the dogs had killed other animals constituted negligence and an " 'omission or neglect' " in violation of OCGA § 16-12-4 (a). Id. at 218.

3. The trial court did not err in refusing to give the jury defendant's request to charge that: "In order to find the Defendant guilty of reckless conduct in connection with his ownership of the dogs, I instruct you that you must find beyond a reasonable doubt that the Defendant knew of the dogs' propensity to do the particular act which caused the death in this case, that is, attack, bite and injure a small child. If the evidence does not establish beyond a reasonable doubt that the Defendant knew of the dogs' propensity to attack, bite and injure a child, you must return a verdict of not guilty." He argues that the "foreseeability requirement" was his sole defense and that the court's instructions did not adequately define the offense of reckless conduct.

Defendant's request to charge was not a correct statement of the criminal law applicable in the case and therefore, the trial court properly refused to charge it. See Division 2, supra; *Garmon v. State*, 219 Ga. 575 (134 SE2d 796) (1964); see also *McRae v. State*, 145 Ga. App. 122 (243 SE2d 110) (1978).

The trial court charged the code sections on reckless conduct,

OCGA § 16-5-60, which defines the same, and on felony involuntary manslaughter, OCGA § 16-5-3 (a). Defendant did not ask for any further elaboration of the elements of the charged offenses save for his unsuccessful attempt to persuade the court to give the aforementioned inappropriate civil charge. Under these circumstances the court's charge on the elements of the offenses was adequate. See *Lewis v. State*, supra at 371 (3).

4. Lastly, appellant enumerates as error the admission of five pre-autopsy photographs of the victim lying on the autopsy table, in that they were irrelevant and prejudicial.

The photographs were not devoid of probative value because they showed the nature of the attack on the victim. From observation of the wounds of the victim, the jury could draw conclusions about the vicious propensities of the animals and weigh this in light of other evidence about the dogs to determine whether or not Turnipseed's conduct regarding them was criminally reckless. *Lewis v. State*, supra at 370 (2); see also *Hance v. State*, 254 Ga. 575, 578 (4) (332 SE2d 287) (1985); *Lewis v. State*, 253 Ga. 339, 340 (1) (320 SE2d 161) (1984).

*Judgment affirmed. McMurray, P. J., concurs. Sognier, J., concurs in the judgment only.*

DECIDED MARCH 9, 1988.

*Donald F. Samuel*, for appellant.
*Robert E. Wilson, District Attorney, John H. Petrey, Assistant District Attorney*, for appellee.