727 S.E.2d 751

**The STATE, Respondent,**

v.

**Bentley COLLINS, Appellant.**

**No. 4941.**

Court of Appeals of South Carolina.

Heard Nov. 2, 2011.
Decided Feb. 15, 2012.
Rehearing Denied March 15, 2012.

198

Senior Appellate Defender Joseph L. Savitz, III, and Appellate Defender Susan Hackett, both of Columbia, for Appellant.

Attorney General Alan M. Wilson, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliot, Assistant Attorney General William M.

Blitch, Jr., all of Columbia; and Solicitor William B. Rogers, Jr., of Bennettsville, for Respondent.

FEW, C.J.

Bentley Collins was convicted of involuntary manslaughter and three counts of owning a dangerous animal after his dogs killed a ten-year-old boy. Collins appeals the convictions claiming the trial court erred by (1) admitting seven autopsy photographs of the boy's partially eaten body and (2) denying his directed verdict motions as to both crimes. Because we find the trial court abused its discretion in admitting the photos, we reverse and remand for a new trial.

## I. Facts

At around 7:00 p.m. on November 3, 2006, the boy's mother returned from a trip to find her son had not come home for dinner. After looking for him at neighbors' houses, she called the sheriff's department. The responding officers searched the neighborhood with her. They found the boy's body in Collins' yard surrounded by at least three dogs.[1] The boy's mother later testified "he was torn to pieces. Pieces."

Collins was indicted for involuntary manslaughter and three counts of owning a dangerous animal under the Regulation of Dangerous Animals Act. S.C.Code Ann. §§ 47–3–710 to –770 (Supp.2011). After a jury convicted him of all charges, the trial court sentenced him to five years in prison, followed by five years of probation.[2]

## II. Admissibility of the Photographs

■ The State offered into evidence ten photos of the boy's body. The photos were taken by a forensic pathologist before he performed an autopsy. Collins objected to the admission of

1. Collins was not home at the time of the incident or when the officers and the boy's mother arrived.

2. The specific sentences were five years for involuntary manslaughter and three years concurrent for two of the dangerous animal convictions. On the third dangerous animal conviction, the sentence was three years consecutive suspended on five years' probation and the payment of $8,000 in restitution to the boy's family for funeral expenses.

the photos under Rule 403, SCRE, arguing that the danger of unfair prejudice substantially outweighed their probative value. After a hearing outside of the jury's presence, the trial court admitted seven of the photos.

## A. Standard of Review

 "The admission of evidence is within the circuit court's discretion and will not be reversed on appeal absent an abuse of that discretion." *State v. Dickerson*, 395 S.C. 101, 116, 716 S.E.2d 895, 903 (2011). A trial court has particularly wide discretion in ruling on Rule 403 objections. See *State v. Adams*, 354 S.C. 361, 378, 580 S.E.2d 785, 794 (Ct.App.2003) ("A trial judge's decision regarding the comparative probative value and prejudicial effect of evidence should be reversed only in exceptional circumstances. We ... are obligated to give great deference to the trial court's judgment [regarding Rule 403]." (internal citation omitted)). We nevertheless hold that in this case the trial court abused its discretion.

## B. Probative Value

 Rule 403 provides that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." "Probative" means "[t]ending to prove or disprove." *Black's Law Dictionary* 1323 (9th ed.2009). Probative value is the measure of the importance of that tendency to the outcome of a case. It is the weight that a piece of relevant evidence will carry in helping the trier of fact decide the issues. "[T]he more essential the evidence, the greater its probative value." *United States v. Stout*, 509 F.3d 796, 804 (6th Cir.2007) (internal quotation marks omitted). Thus, a court analyzing probative value considers the importance of the evidence and the significance of the issues to which the evidence relates. As our supreme court stated in *State v. Torres*, 390 S.C. 618, 703 S.E.2d 226 (2010), "[p]hotographs calculated to arouse the sympathy or prejudice of the jury should be excluded if they are ... not *necessary* to substantiate *material* facts or conditions." 390 S.C. at 623, 703 S.E.2d at 228 (emphasis added). The evaluation of probative value cannot be made in the abstract, but should be made in the practical context of the issues at stake in the trial of each case. See *State v. Lyles*,

379 S.C. 328, 338, 665 S.E.2d 201, 206 (Ct.App.2008) ("When [balancing the danger of unfair prejudice] against the probative value, the determination must be based on the entire record and will turn on the facts of each case." (citing *State v. Gillian*, 373 S.C. 601, 609, 646 S.E.2d 872, 876 (2007))).

Understanding the practical context of the trial of this case begins with the elements of the crimes charged. A person is guilty of owning a dangerous animal when the State proves (1) he owned or had custody or control of an animal; (2) he knew or reasonably should have known the animal had a propensity, tendency, or disposition to attack unprovoked, cause injury, or otherwise endanger the safety of human beings; (3) the animal made an unprovoked attack; (4) the attack caused bodily injury to a human being; and (5) the attack occurred while the animal was unconfined on the owner's premises. S.C.Code Ann. §§ 47–3–710(A)(1)–(2)(a), (D); –720; –760(B) (Supp.2011).

■ To convict a defendant of involuntary manslaughter, the State must prove one of the following: "(1) the unintentional killing of another without malice, but while engaged in an unlawful activity not naturally tending to cause death or great bodily harm; or (2) the unintentional killing of another without malice, while engaged in a lawful activity with reckless disregard for the safety of others." *State v. Crosby*, 355 S.C. 47, 51–52, 584 S.E.2d 110, 112 (2003).

■ On the dangerous animal charges in this case, the trial focused almost exclusively on issues relating to the second and third elements. Importantly, the fourth element—that the dogs' attack caused bodily injury to a human being—was never in dispute. In the hearing regarding admissibility of the photos, the State argued they would be important for the testimony of both the pathologist and the dog behavior expert. The State then explained how the photos were important, arguing only that they were probative of the third element. The State did not argue the photos were probative of any other element of the dangerous animal charges or any element of involuntary manslaughter.

The State thus argued the probative value of the photos was primarily to establish that the dogs' attack on the boy was unprovoked. The State's theory on this point was that Collins

underfed the dogs, and because the dogs were hungry, they became aggressive and attacked the boy for food. On appeal, the State makes two specific arguments as to how the photos support its theory: the pathologist needed the photos to explain that the dogs ate the boy, and the photos corroborate the testimony of its dog behavior expert.

As to the State's first argument, the photos do show that the dogs ate a significant portion of the boy's flesh. Prior to the introduction of the photos, however, the State presented convincing testimony to prove the same thing. The pathologist testified:

> There were extensive traumatic injuries consisting of loss of skin and soft tissue in a tearing fashion about the face, the ears, the eyes, the neck, the chest. There was loss of skin and soft tissue with exposure of the bones of both shoulders. Essentially, the humeral bone in the upper arm, both right and left, was exposed from the shoulder to the elbow.

The State also put the autopsy report into evidence prior to the photos. The pathologist testified to the contents of the report as follows:

> I described it as extensive traumatic injury, loss of skin to the face to include the nose, the ears and all soft tissues around the lips with exposure of the mandible, which is the lower jaw, teeth, and the underlying bony part of the skull.... The ears and nose were completely eaten away.

The State asked the pathologist what led him to conclude the ears and nose were "eaten away." He responded: "There was a virtual complete absence of the ear structures on the right side and just remnants, shredded remnants of skin and what were probably portions of the ear on the left. They were essentially gone." Finally, the pathologist said he normally does not take photos of an autopsy, but did so in this case because "[t]his autopsy showed tremendous traumatic injury to this young man. This degree of injury was [as] significant [a] traumatic injury as I've seen. I've never seen an attack by animals of this type...." Thus, before the photos were admitted, the pathologist's testimony conclusively established that the dogs ate the boy. The photos add very little to the jury's ability to understand the pathologist's testimony on this point.

The State's second argument relates to its dog behavior expert, who testified the dogs attacked the boy out of hunger, not provocation. The expert used photographs of the dogs to describe physical features that showed they were malnourished. The officers who responded to the scene testified there were no visible food bowls for the dogs. Based on this evidence, the dog behavior expert gave an opinion that the dogs attacked the boy because they were hungry.[3]

The State argues the photos corroborate the dog behavior expert's testimony and thus tend to prove the attack was unprovoked. However, the photos relate to the expert's opinion only to the extent they show the same fact testified to by the pathologist, that the dogs ate the boy. As discussed above, the photos add little to the pathologist's testimony. Moreover, the expert hardly mentioned the photos of the boy. The assistant solicitor asked this expert only one question regarding the photos: "Could you tell the jury what you found significant in reviewing those particular photos ... as it relates to the level of aggression with the dogs[?]" The witness's response to the question did not relate the photos to his opinion or to how he arrived at it. Rather, the response highlights the unfair prejudice in the photos.

> Based on—in ten years going back on reports that I've noted on dog bites and dog attacks and deaths caused by dogs this is the worst case I've ever seen. I worked for the sheriff's office for over a decade, and I have never seen something so gruesome.

The photos add little to the jury's ability to understand the dog behavior expert's testimony.

Finally, we address the trial court's statement that the photos are probative of the cause of the boy's death. In explaining his ruling to admit the photos, the trial court stated "we've got to keep in mind ... involuntary manslaughter, which involves cause of death." We find the photos add very little to the pathologist's ability to explain or the jury's ability to understand the cause of death. The pathologist testified

---

3. The dog behavior expert also testified the dog bites on the lower part of the boy's body indicated "the dogs had bitten the ten-year-old in the legs taking him down first.... They would go for the legs first and take him down which shows from the bites and the tissue loss."

the boy "died as a result of extensive traumatic injury secondary to being mauled by dogs." In particular, the pathologist testified the dogs "lacerated, basically transected the jugular vein on the left side." When the pathologist discussed the photos, however, he had already completed his explanation of the cause of death. The only mention the pathologist made of the cause of death during his discussion of the photos was his description of one of the photos as "an enlarged view showing the degree of injury to the left neck of this young man." As to that photo, he stated that the torn jugular vein was "very hard to see in this picture." Other than to discount the importance of the photos with this statement, the pathologist did not use any of them to explain the cause of death.

We agree that the photos have some probative value in helping the jury understand each of the three points argued by the State: (1) the pathologist's testimony that the dogs ate the boy, (2) the dog behavior expert's opinion that the dogs' attack on the boy was unprovoked, and (3) the pathologist's testimony that the dogs' attack in general and the torn jugular vein in particular caused the boy's death. However, the photos add little to the testimony of the witnesses on these three points. Referring to the supreme court's statement in *Torres* that "[p]hotographs calculated to arouse the sympathy or prejudice of the jury should be excluded if they are ... not necessary to substantiate material facts," the photos in this case are hardly "necessary." 390 S.C. at 623, 703 S.E.2d at 228.

More importantly, the issues the State argues the photos relate to are hardly "material." The three points argued by the State relate to the conduct of the dogs. As to the elements of the crimes, the focus of the trial should have been on Collins' conduct and whether *his* conduct was criminal in nature. The conduct of the dogs is important, but only to the extent the dogs' conduct shows Collins' conduct. The photos are far removed from Collins' conduct, and even farther removed from whether Collins' conduct was criminal. The photos show the boy's body after the dogs attacked and killed him. The condition of the boy's body circumstantially shows the conduct of the dogs on the day of the attack—they ate the boy. From the conduct of eating the boy, the State argues the jury should infer the dogs were hungry, from which in

turn the State argues the jury should infer that Collins starved them. At this point in the chain of inferences that the State asks the jury to draw from these photos, Collins has not violated the Dangerous Animals Act. At least two more steps are required. From the fact that he starved the dogs, the State argues Collins must have done so knowingly, and from this he reasonably should have known the dogs "had a propensity, tendency, or disposition to make an unprovoked attack" on a child to get food. In the practical context of the issues at stake in the trial of this case, these photos are of little significance.

For these reasons, we find the probative value of the photos is minimal.

### C. The Danger of Unfair Prejudice

The probative value of the photos must be balanced against "the danger of unfair prejudice." Prejudice that is "unfair" is distinguished from the legitimate impact all evidence has on the outcome of a case. " 'Unfair prejudice does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest decision on an improper basis.' " *State v. Gilchrist,* 329 S.C. 621, 630, 496 S.E.2d 424, 429 (Ct.App.1998) (quoting *United States v. Bonds,* 12 F.3d 540, 567 (6th Cir.1993)). "All evidence is meant to be prejudicial; it is only *unfair* prejudice which must be [scrutinized under Rule 403]." *Id.* (quoting *United States v. Rodriguez-Estrada,* 877 F.2d 153, 156 (1st Cir.1989)); *see also United States v. Mohr,* 318 F.3d 613, 619–20 (4th Cir.2003) ("Rule 403 only requires suppression of evidence that results in unfair prejudice—prejudice that damages an opponent for reasons other than its probative value, for instance, an appeal to emotion....").

Photographs pose a danger of unfair prejudice when they have "an undue tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one." *State v. Holder,* 382 S.C. 278, 290, 676 S.E.2d 690, 697 (2009) (internal quotation marks omitted). This definition of unfair prejudice was taken originally from the Advisory

Committee Notes to the formerly identical federal rule 403.[4]
*See State v. Alexander*, 303 S.C. 377, 382, 401 S.E.2d 146, 149
(1991) (adopting the definition of unfair prejudice recited in
the Notes of the Federal Rules Advisory Committee). Re-
garding this definition, the Supreme Court of the United
States stated: "The term 'unfair prejudice,' as to a criminal
defendant, speaks to the capacity of some concededly relevant
evidence to lure the factfinder into declaring guilt on a ground
different from proof specific to the offense charged." *Old
Chief v. United States*, 519 U.S. 172, 180, 117 S.Ct. 644, 136
L.Ed.2d 574 (1997). Like probative value, unfair prejudice
should be evaluated in the practical context of the issues at
stake in the trial of the case. *See State v. Wilson*, 345 S.C. 1,
7, 545 S.E.2d 827, 830 (2001) ("The determination of prejudice
must be based on the entire record and the result will
generally turn on the facts of each case.").

The seven photos admitted are graphic and shocking. They
depict a ten-year-old boy's body on an autopsy table after
being partially eaten by dogs. The photos are in color. One
photo provides an encompassing view of what remains of the
boy's upper body. Three close-up photos show the remains of
his face. The exposed skull and jaw bone are plainly visible in
these photos. Two of these close-ups also show the exposed
arm, shoulder, and rib bones, where the flesh was eaten away
from the middle of his chest, across his shoulder and down to
his elbow, on both sides. One photo shows the left side of the
boy's face from the back, again with the exposed jaw bone
visible. The remaining two photos are of the body from the
waist down, showing his blood-stained shorts and the bite
marks on his legs. The pathologist described what the photos
show, but seeing the photos draws an intense emotional re-
sponse and a level of sympathy for the dead child that does
not come from the testimony. It is difficult to look at each
photo, and the combined effect of all seven is disturbing. The
photos that show what remains of the child's face are chilling.

---

4. Rule 403 and other federal rules of evidence were amended on
December 1, 2011, "as part of the restyling of the Evidence Rules to
make them more easily understood and to make style and terminology
consistent throughout the rules." Rule 403, FRE, advisory committee's
note. The changes to Rule 403, FRE, are "stylistic only," with "no
intent to change any result in any ruling on evidence admissibility." *Id.*

The danger of unfair prejudice of the admitted photos is extreme.

## D. Balancing Probative Value and Unfair Prejudice

We have noted that a trial court has particularly wide discretion in ruling on Rule 403 objections. *Adams*, 354 S.C. at 378, 580 S.E.2d at 794. In this case, however, we find the danger of unfair prejudice in these photographs substantially outweighs their probative value, and the trial court abused its discretion in ruling otherwise.

Our analysis depends heavily on the capacity of these photos to draw the jury's attention away from the elements of the crimes charged, which are framed to focus the jury primarily on the conduct of the defendant. Seeing the photos of the child's partially eaten body lying on the autopsy table prompts an intense emotional response. The photos evoke sympathy for the boy and also for his mother for what she must have endured when she saw her son in this condition in Collins' yard. Consequently, the photos have precisely the effect contemplated by the definition of unfair prejudice: "an undue tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one." *Holder*, 382 S.C. at 290, 676 S.E.2d at 697 (internal quotation marks omitted). As stated in *Old Chief*, the photos "lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." In *Old Chief*, the improper ground for declaring guilt was the defendant's propensity to commit crimes. 519 U.S. at 180–81, 117 S.Ct. 644. Other courts have identified additional improper grounds, such as when the evidence "appeals to the jury's sympathies [or] arouses its sense of horror." *United States v. Thompson*, 359 F.3d 470, 479 (7th Cir.2004) (internal quotation marks omitted).

These gruesome photos have an overwhelming capacity to lure the jury into declaring guilt on the emotional basis of sympathy for the boy and his mother and horror at the sight of the boy's body. This is the unfair prejudice that substantially outweighs the probative value of the photos. We recognize that the photos add a visual element not present in the testimony of the witnesses. However, this visual element does

far more to create a danger of unfair prejudice than it does to add probative value. These photos are beyond "the outer limits of what our law permits a jury to consider." *See Torres*, 390 S.C. at 624, 703 S.E.2d at 229. For this reason, we find the trial court abused its discretion in admitting the photos.[5]

### E. The Probative Value of Corroboration

The State argues, however, that the photos corroborate the testimony of the pathologist and the dog behavior expert, and thus have sufficiently high probative value that it is not substantially outweighed by the danger of unfair prejudice. The State is correct that the extent to which an autopsy photograph corroborates other evidence or testimony increases its probative value. However, the probative value from a photograph's tendency to corroborate will vary depending on the facts of an individual case. In some cases, photographs that corroborate important testimony on issues significant to the case may have very high probative value. As we have already explained, however, the photos in this case have minimal probative value, even considering the limited extent to which they corroborate the testimony of the witnesses.

This conclusion is supported by our opinion in *State v. Jarrell*, 350 S.C. 90, 564 S.E.2d 362 (Ct.App.2002). In *Jarrell*, we stated: "A test to determine whether the trial court abused its discretion is whether the photographic evidence serves to corroborate the testimony of witnesses offered at trial. 'If the photograph serves to corroborate testimony, it is not [an] abuse of discretion to admit it.'" 350 S.C. at 106, 564 S.E.2d at 371 (quoting *State v. Rosemond*, 335 S.C. 593, 597, 518 S.E.2d 588, 590 (1999)). As our opinion in *Jarrell* indicates, however, the photographs admitted in that case corroborated important testimony on significant issues to such an extent that their probative value was very high.

Jarrell was charged with homicide by child abuse, accessory before and after murder, criminal sexual conduct, and unlaw-

---

5. *See Old Chief*, 519 U.S. at 182–83, 117 S.Ct. 644 ("If an alternative [is] found to have substantially the same or greater probative value but a lower danger of unfair prejudice, sound judicial discretion would discount the value of the item first offered and exclude it if its discounted probative value were substantially outweighed by unfairly prejudicial risk.").

ful conduct towards a child. 350 S.C. at 95, 564 S.E.2d at 365. Like the photos in this case, the photographs admitted in *Jarrell* showed the extent of the child's injuries. Unlike this case, however, the child's injuries in *Jarrell* were essential to the State's ability to prove the crimes of homicide by child abuse, criminal sexual conduct, and unlawful conduct towards a child. This is because the elements of those crimes require the jury to focus on the effect the defendant's conduct had on the child. Thus, we placed importance on the fact that the *Jarrell* photographs "corroborated the testimony about the condition of the child." 350 S.C. at 106, 564 S.E.2d at 371. Further, the time of the child's death was an important issue in *Jarrell.* The fact that the baby had been dead long enough for rigor mortis to set in and decomposition to begin, as shown by the photographs, "corroborated the pathologist's testimony about the time of death" and "support[ed] the charge against Jarrell of accessory after the fact." *Id.*

Most importantly, the *Jarrell* photographs corroborated testimony supporting the State's theory of motive. Jarrell discussed the abuse and death of the child with inmates while she was in jail awaiting trial. "She ... stated that she and Father planned to kill the baby ... because the baby had an upcoming doctor's appointment and the abuse would be readily apparent to anyone examining the baby." 350 S.C. at 96, 564 S.E.2d at 366. We explained the significance of the photos to Jarrell's motive as follows:

> We agree that the photographs were necessary to corroborate the testimony presented at trial. A photograph displaying the anal injuries due to the sexual abuse corroborated both the pathologist's testimony regarding the extent of those injuries and the witnesses' testimony that Jarrell's motive for planning to kill the baby was because the sexual abuse was readily apparent.

350 S.C. at 106, 564 S.E.2d at 371.

The supreme court has also placed importance on the fact that autopsy photographs corroborate the testimony of witnesses. In *Holder,* the court stated: " 'If the offered photograph serves to corroborate testimony, it is not an abuse of discretion to admit it.' " 382 S.C. at 290, 676 S.E.2d at 697 (quoting *State v. Nance,* 320 S.C. 501, 508, 466 S.E.2d 349, 353

(1996)). *Holder* was also a homicide by child abuse case. Thus, as in *Jarrell,* the injuries to the child were critical to the State's ability to prove the elements of the crime. The supreme court explained: "The photographs corroborated the pathologist's testimony about the extensive bruising on the child, which was in various stages of healing, and showed that even internal organs manifest signs of bruising. This is particularly helpful to jurors who are unversed in medical matters." 382 S.C. at 290–91, 676 S.E.2d at 697. The photos also corroborated the pathologist's testimony refuting Holder's testimony.

> Although Holder testified she was unaware of any marks on her son prior to his death and thought he was suffering from simple food poisoning, it is abundantly clear from the extensive bruising on the child, which was in various stages of healing, and the torn internal organs, that he had been seriously injured. These photographs demonstrate that the damage to the child would have been difficult to ignore.

382 S.C. at 291, 676 S.E.2d at 697.

Because the photographs in *Jarrell* and *Holder* strongly corroborated important testimony on significant issues, the photographs were found to have very high probative value. The supreme court explained this in *Holder:* "We find the photographs clearly demonstrate the extent and nature of the injuries in a way that would not be as easily understood based on the testimony alone." 382 S.C. at 290, 676 S.E.2d at 697.

Depending on the facts of a specific case, there may be other ways in which evidence challenged under Rule 403 corroborates evidence. *See Black's Law Dictionary* 636 (9th ed. 2009) ("[C]orroborating evidence" is "[e]vidence that differs from but strengthens or confirms what other evidence shows (esp. that which needs support)."). Trial courts should consider the corroborating effect of evidence when analyzing its probative value. However, the limited extent to which these photos corroborate the testimony of the witnesses does not significantly increase the minimal probative value of the photos. A photograph of the partially eaten body of a child is not necessary to demonstrate that the dogs killed the boy and ate a significant portion of his flesh. These facts are readily understood based on the pathologist's testimony alone. Thus,

we disagree with the State that these photos sufficiently corroborate the testimony of the pathologist or the dog behavior expert such that the probative value of the photos is not substantially outweighed by the extreme danger of unfair prejudice.

## F. Deference to the Trial Court's Analysis

The State also argues the trial court's exclusion of several photographs indicates it did exercise discretion, and we should not disturb that exercise. The State correctly points out that both the supreme court and this court have deferred to the judgment of the trial court when the record reveals the trial court actually exercised its discretion. *See, e.g., Jarrell,* 350 S.C. at 106, 564 S.E.2d at 371 ("Significantly, the trial court did not admit all the photographs, giving the State a choice between two photographs depicting the same injury.... [T]he trial court's exclusion of photographs demonstrates it exercised its discretion."); *see also Torres,* 390 S.C. at 624, 703 S.E.2d at 229 ("[T]he trial judge did exercise his discretion by excluding three of the State's photographs, ruling that they were duplicative and prejudicial.").

The record in this case, however, shows that the trial court did not independently analyze the probative value of the photos. Therefore, the trial court did not properly exercise its discretion. *See State v. Mansfield,* 343 S.C. 66, 86, 538 S.E.2d 257, 267 (Ct.App.2000) ("The failure to exercise discretion, however, is itself an abuse of discretion."). The State called the pathologist to testify during the admissibility hearing. The court began its examination of the pathologist by telling him the State wanted to admit the photos at issue because they were "necessary for you to explain your findings." The court then asked the pathologist to "confirm" whether or not he "need[ed]" each photo. The pathologist answered the question in conclusory fashion: "Your honor, these would certainly enable me to describe the degree of injury and show the extent of it.... [T]hese I think would be very beneficial to explain exactly what happened to this young man." The court then asked the pathologist: "Are there some in there that we could pull out that are merely repetitious?" The pathologist identified three photos, which were not admitted. The court then stated:

Okay, based on [the pathologist's] testimony [that] he needs it in his scientific explanation I'm allowing those in . . . .

After counsel for Collins and the State questioned the pathologist, the trial court ruled:

It is an unusual case, however, we've got to keep in mind that we've got involuntary manslaughter which involves death, cause of death. You've got [the pathologist] here who is one of the best, and he's informed the Court that he needs it. All right. I'm standing by what I've done. I'm overruling the objections . . . .

Without evaluating the probative value of the photos, the trial court was unable to balance that probative value against the danger of unfair prejudice, as required by Rule 403. The trial court's failure to independently make that evaluation is particularly significant in this case because, as we discussed earlier, the pathologist's explanation of the importance of the photos does not withstand scrutiny. Moreover, while the pathologist is fully capable of understanding the importance of the photos to medical considerations such as cause of death, the pathologist is not the person charged with the responsibility of relating that importance to the legal issues in the case. The trial court is charged with that responsibility.

The danger of unfair prejudice is so high that it required little analysis. The probative value, on the other hand, required careful analysis. In *Jarrell* and *Torres* the appellate court deferred to the judgment of the trial court when it admitted some autopsy photographs but excluded others. The deference in those cases, however, was not simply to the trial court's decision. Rather, the appellate court deferred to the trial court's analysis. We do not defer to the trial court's decision in this case because the record reflects it was not based on the court's own analysis.

### III. Harmless Error

We have considered whether the admission of the photographs was harmless beyond a reasonable doubt. *See State v. Myers*, 359 S.C. 40, 48, 596 S.E.2d 488, 492 (2004) (declining to reverse for error under Rule 403 because the error was harmless). In making the determination that the error was not harmless, we have considered the fact that the

other evidence of the condition of the child's body also has potential to cause a similar emotional reaction we find constitutes the unfair prejudice in these photographs. Thus, we have evaluated whether the additional emotional impact of the photographs over and above that caused by other evidence in the case is such that the erroneous admission of the photographs is harmless. Given the intense emotional reaction caused by viewing these photos, we cannot say that their admission into evidence was harmless beyond a reasonable doubt. Accordingly, we reverse the trial court's decision to admit the photos and remand for a new trial.

### IV. Directed Verdict

Collins argues the trial court erred in denying his motions for directed verdict as to both crimes. We find evidence in the record to support each element of both crimes. Therefore, the trial court ruled correctly in denying Collins' motions for directed verdict. *See State v. Phillips,* 393 S.C. 407, 412, 712 S.E.2d 457, 459 (Ct.App.2011) ("An appellate court may reverse the trial court's denial of a directed verdict motion only if no evidence supports the trial court's ruling.").

Accordingly, the decision of the trial court to admit the photos is **REVERSED** and the case is **REMANDED** for a new trial.

THOMAS and KONDUROS, JJ., concur.