# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Petitioner,

v.

Bentley Collins, Respondent.

Appellate Case No. 2012-211266

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal From Dillon County
The Honorable Paul M. Burch, Circuit Court Judge

---

Opinion No. 27439
Heard April 15, 2014 – Filed August 20, 2014

---

## REVERSED

---

Attorney General Alan McCrory Wilson and Assistant
Attorney General William M. Blitch, Jr., both of
Columbia, for Petitioner.

Appellate Defender Susan Barber Hackett, of Columbia,
for Respondent.

---

**JUSTICE BEATTY:** Respondent Bentley Collins was convicted of involuntary manslaughter and three counts of owning a dangerous animal causing injury to a person after a ten-year-old boy was killed and partially eaten by his dogs, most of whom were pitbull mixes. The State appeals from a decision of the

Court of Appeals that reversed and remanded the matter for a new trial based solely on the trial court's admission of seven pre-autopsy photos of the victim. *State v. Collins*, 398 S.C. 197, 727 S.E.2d 751 (Ct. App. 2012). We reverse.

## I. FACTS

On November 3, 2006, the mother of the victim returned to her home in Dillon County around 7:00 p.m. and discovered that her ten-year-old son had not come home for dinner at 5:30 p.m. as expected. She checked with her aunt, who resided with her, and then began looking around the neighborhood. She called the police when she could not find her son. The police arrived and the mother rode with them as they scoured the neighborhood. Shortly after 10:00 p.m., they discovered the boy's body on the ground in Collins's yard, with a group of dogs nearby. The mother poignantly recalled that her son "was tore to pieces. Pieces."

The mother and the police tried to get to the boy, but the dogs ran at them each time they approached his body. Agents from SLED arrived, and they could not process the crime scene until animal control employees arrived to capture and remove the dogs from the scene.

Neither Collins nor any of his family members were at home. Collins had six dogs on the premises, all of which were unrestrained. Collins had no fence or dog pens, and neighbors reported that he never kept his dogs on leashes or chains. Most of the dogs appeared to be pitbull mixes. The three largest dogs weighed 47 pounds, 44 pounds, and 36 pounds, respectively, and they ranged in age from about one to two years old. Several of the dogs had bite wounds on their shoulders, which was indicative of dog fighting. One of the female dogs captured was determined to be in heat.

An autopsy of the victim revealed the boy died of extensive traumatic injury secondary to being severely mauled by dogs. According to the forensic pathologist, Edward Proctor, the boy suffered a "tremendous number" of bite marks on his legs and had "extensive" loss of skin and soft tissue on his upper body and his face, including his ears and nose, which were "completely eaten away" by the dogs. Areas of the boy's chest and his arm had also been eaten, exposing the bone. The boy's jugular vein on the left side was torn in half, causing significant blood loss leading to his death. The pathologist determined the boy "would have been alive until the injuries to the neck that transected the blood vessel in the neck allowing him to bleed enough until he either became unconscious or expired."

Two boys who lived in the neighborhood, "J" and "B," gave statements to the police the day after the incident. They were in J's yard at around sunset on November 3, 2006 when they heard growling and barking nearby. J had been looking for his puppy, so they went to investigate and saw three of Collins's dogs eating something on the ground that appeared to be "a bloody piece of meat." As J walked to within about ten feet of the "meat," another dog that they had not seen ran out and jumped on J, knocking him to the ground. J shoved that dog away, but another one then came after him. One of the larger dogs bit J "behind [his] neck," so the boys left immediately.

Collins was indicted for involuntary manslaughter and three counts of owning a dangerous animal[1] and allowing it to be unconfined, resulting in the mauling death of the victim. A jury convicted Collins of all charges. Collins appealed to the Court of Appeals, which reversed and remanded for a new trial based solely on the admission of seven photographs that were taken by the pathologist to document the victim's injuries prior to performing the autopsy. This Court granted the State's petition for a writ of certiorari.

## II. STANDARD OF REVIEW

"In criminal cases, the appellate court sits to review errors of law only." *State v. Baccus*, 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006). "This Court is bound by the trial court's factual findings unless they are clearly erroneous." *Id.* "The admission or exclusion of evidence is a matter addressed to the sound discretion of the trial court and its ruling will not be disturbed in the absence of a manifest abuse of discretion accompanied by probable prejudice." *State v. Wise,* 359 S.C. 14, 21, 596 S.E.2d 475, 478 (2004). "An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law." *Id.*

## III. LAW/ANALYSIS

On appeal, the State contends the challenged photos, taken before the autopsy was commenced, accurately documented the injuries sustained by the victim in this case and, while graphic, were properly admitted in accordance with the trial court's broad discretion over evidentiary matters. The State argues the

---

[1] The State charged Collins with three counts of owning a dangerous animal (although six dogs were at the scene) based on the fact that the neighborhood boys specifically saw three of Collins's dogs eating the victim's body.

Court of Appeals (1) failed to give due deference to the trial court's decision, (2) erred in finding the photos were more prejudicial than probative, (3) erred in finding the photos were not material to the elements of the offenses charged and corroborative of other evidence, and (4) erred in making a purely emotional decision to reverse and remand for a new trial. We agree.

## A. Admissibility of Photos

In this case, Collins faced three charges under section 47-3-760 for being the owner of a "dangerous animal"[2] that attacked and injured a human being in violation of section 47-3-710(A)(2)(a) of the South Carolina Code. *See* S.C. Code Ann. § 47-3-760(B) (Supp. 2013) (penalty for dangerous animals). As noted by

---

[2] Section 47-3-710(A) defines "dangerous animal" to "mean[] an animal of the canine or feline family:

(1) which the owner knows or reasonably should know has a propensity, tendency, or disposition to attack unprovoked, cause injury, or otherwise endanger the safety of human beings or domestic animals;

(2) which:

(a) makes an unprovoked attack that causes bodily injury to a human being and the attack occurs in a place other than the place where the animal is confined as required by Section 47-3-720; or

(b) commits unprovoked acts in a place other than the place where the animal is confined as required by Section 47-3-720 and those acts cause a person to reasonably believe that the animal will attack and cause bodily injury to a human being;

(3) which is owned or harbored primarily or in part for the purpose of fighting or which is trained for fighting."

S.C. Code Ann. § 47-3-710(A) (Supp. 2013). Section 47-3-720, referenced above, provides: "No person owning or harboring or having the care or the custody of a dangerous animal may permit the animal to go unconfined on the premises," with "unconfined" in this context meaning "the animal is not confined securely indoors or confined in a securely enclosed fence or securely enclosed and locked pen or run area upon the person's premises." *Id.* § 47-3-720.

the Court of Appeals, under section 47-3-760(B) and its associated statutes, the State was required to prove (1) the defendant owned or had custody or control of a canine or feline; (2) he knew or reasonably should have known the animal had a propensity, tendency, or disposition to attack unprovoked, cause injury, or otherwise endanger the safety of human beings; (3) the animal made an unprovoked attack; (4) the attack caused bodily injury to a human being; and (5) the attack occurred while the animal was unconfined on the defendant's premises. *State v. Collins*, 398 S.C. 197, 203, 727 S.E.2d 751, 754 (Ct. App. 2012).

Collins was also charged with involuntary manslaughter. *See* S.C. Code Ann. § 16-3-60 (2003) (providing "[a] person charged with the crime of involuntary manslaughter may be convicted only upon a showing of criminal negligence," which "is defined as the reckless disregard of the safety of others"). To establish this offense, the State must show the defendant killed another person without malice and unintentionally while the defendant was engaged in either (1) an unlawful activity not amounting to a felony and not naturally tending to cause death or great bodily harm, or (2) a lawful activity with a reckless disregard of the safety of others. *State v. Crosby*, 355 S.C. 47, 584 S.E.2d 110 (2003); *State v. Tyler*, 348 S.C. 526, 560 S.E.2d 888 (2002).

In this case, the ten-year-old victim's body was discovered in the defendant's yard, having suffered numerous bite marks and being partially eaten by the dogs. There were no eyewitnesses to the attack. At trial, the State attempted to piece together a theory of what transpired with the best evidence available, the victim's body, and its expert witnesses, which included a forensic pathologist and a dog behaviorist. They theorized that it was an unprovoked attack in which the victim was taken down by his legs first based on the wounds observed on the body, and then the boy suffered additional harm to his jugular vein and other areas, leading to his death. According to the State's dog behavior expert, the dogs, who were not restrained in any way, acted as a pack and could have been malnourished or mistreated based on the dogs' gaunt appearance, the absence of any food at the scene, and the appearance of the victim's body, which appeared to have been eaten by more than one dog due to the significant tissue loss. The dog expert noted that in over ten years of working for the Sheriff's Office analyzing dog bites, dog attacks, and deaths caused by dogs, this was the worst case he had ever seen.

The State also presented evidence of the dogs' prior acts of aggression towards people in the neighborhood, several occurring while Collins stood by and watched without taking any action to restrain his dogs. For example, B, one of the two boys who came upon the victim's body after the attack, testified he had

numerous encounters with the dogs, as they were "never" restrained. B recounted that on at least two occasions, Collins stood by and watched as the dogs ran out into the road after him and his friend J as they drove four-wheelers. Collins did not attempt to intervene. In addition, when B and his mother tried to walk in the neighborhood for exercise, the dogs would "frequently" come out and try to bite their legs, so they wound up having to change their route just to avoid Collins's aggressive dogs.

In order to support its assertions about the dangerous propensities of the dogs, the manner and extent of the attack, and Collins's criminal negligence, the State also offered a group of photos taken of the victim by Proctor, the forensic pathologist, before he began the autopsy. The trial court engaged in an extended colloquy *in camera* with the State and defense counsel in which the trial court allowed both sides to make arguments, and then the attorneys and the court examined the pathologist about each of the proposed photos in turn. The trial court pulled some photos and ultimately allowed into evidence seven of the pre-autopsy photos, State's Exhibits 27 and 30 to 35, over defense counsel's Rule 403, SCRE objection.[3]

In his trial testimony, Proctor explained that he did not normally take autopsy photos, but in his years of experience he had "never seen an attack by animals of this type, [so he] actually left the autopsy and went to [his] home and brought [his] camera back and took pictures *for [] documentation purposes*." (Emphasis added.) Proctor found there was "tremendous traumatic injury to this young man" that was as "significant [a] traumatic injury as [he had] seen."

During cross-examination, defense counsel questioned Proctor's findings extensively by asking him whether he had surveyed the dogs' teeth marks to determine which dogs inflicted specific injuries, whether the boy's jugular artery was "actually severed," and which came first, the "shredding" of the boy's jugular artery or the veins in his arms, etc. Thus, the nature and extent of the boy's physical injuries as described by the pathologist were in contention by the defense.

Moreover, while Collins did not testify, his witnesses, including his children and friends, did so, and they maintained the dogs were not at all dangerous, that

[3] The first two photos, numbers 27 and 30, show the boy's legs having numerous bite marks, but they clearly do not rise to a level that could be deemed unfairly prejudicial. The remaining five photos, 31 to 35, which are the true focus of our inquiry, variously show the boy's exposed jawbone and upper arm bone, and the areas where his chest and face had been partially eaten during the dog attack.

they had never run at people in an aggressive manner, and that they had always been given an abundance of food. The defense opined that the presence of the female dog in heat had perhaps made the dogs more agitated and territorial than normal, but they were not dangerous animals. However, after considering all of the available evidence, the jury made a determination of guilt as to the charges.

The Court of Appeals reversed and remanded for a new trial solely on the basis of the trial court's decision to admit the pre-autopsy photos, reasoning the probative value of the challenged photos was substantially outweighed by their potential for being unfairly prejudicial under Rule 403, SCRE, and that the error was not harmless. *State v. Collins*, 398 S.C. 197, 727 S.E.2d 751 (Ct. App. 2012). The court "agreed[d] that the photos have some probative value in helping the jury," and "recognize[d] that the photos add a visual element not present in the testimony of the witnesses," but ultimately found these considerations were outweighed by the danger of unfair prejudice. *Id.* at 206-12, 727 S.E.2d at 756-60. In finding the trial court abused its discretion, the court repeatedly described the photos as "disturbing" and "gruesome." *Id.* at 208-09, 727 S.E.2d at 757-58.

As a general rule, all relevant evidence is admissible. Rule 402, SCRE. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, SCRE. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." Rule 403, SCRE.

"The relevancy, materiality, and admissibility of photographs as evidence are matters left to the sound discretion of the trial court." *State v. Nance*, 320 S.C. 501, 508, 466 S.E.2d 349, 353 (1996). "If the offered photograph serves to corroborate testimony, it is not an abuse of discretion to admit it." *Id.* "When [balancing the danger of unfair prejudice] against the probative value, the determination must be based on the entire record and will turn on the facts of each case." *State v. Lyles*, 379 S.C. 328, 338, 665 S.E.2d 201, 206 (Ct. App. 2008).

"A trial judge's decision regarding the comparative probative value and prejudicial effect of evidence should be reversed only in exceptional circumstances." *State v. Adams,* 354 S.C. 361, 378, 580 S.E.2d 785, 794 (Ct. App. 2003). "We review a trial court's decision regarding Rule 403 pursuant to the abuse of discretion standard and are obligated to give great deference to the trial court's judgment." *Id.*

Under our highly deferential standard of review, we conclude, contrary to the Court of Appeals, that the trial court did not abuse its wide scope of discretion in admitting the pre-autopsy photos.  The Court of Appeals's obvious revulsion for the evidence, while certainly understandable, permeated its legal analysis.  The evidence was highly probative, corroborative, and material in establishing the elements of the offenses charged; its probative value outweighed its potential prejudice; and the appellate court should not have invaded the trial court's discretion in admitting this crucial evidence based on its emotional reaction to the subject matter presented.[4]

Courts must often grapple with disturbing and unpleasant cases, but that does not justify preventing essential evidence from being considered by the jury, which is charged with the solemn duty of acting as the fact-finder.  As one court has astutely observed, it is the duty of courts and juries to examine the evidence in even the most unpleasant of circumstances:

> Courts and juries cannot be too squeamish about looking at unpleasant things, objects, or circumstances in proceedings to enforce the law and especially if truth is on trial.  The mere fact that an item of evidence is gruesome or revolting, if it sheds light on, strengthens or gives character to other evidence sustaining the issues in the case, should not exclude it.

*Nichols v. State*, 100 So. 2d 750, 756 (Ala. 1958) (citations omitted); *see also Camargo v. State*, 940 S.W.2d 464, 467 (Ark. 1997) ("Even the most gruesome photographs may be admissible if they tend to shed light on any issue, to corroborate testimony, or if they are essential in proving a necessary element of a case, are useful to enable a witness to testify more effectively, or enable the jury to better understand [the] testimony.  Other acceptable purposes are to show the condition of the victims' bodies, the probable type or location of the injuries, and the position in which the bodies were discovered."  (internal citation omitted)).

---

[4]  To the extent the Court of Appeals stated it would not defer to the trial court's discretion because it did not conduct its "own" Rule 403 analysis, we find the record shows the trial court did thoroughly consider the arguments of both the State and the defense, and it examined each photo while also conducting an examination of the forensic pathologist who took the photographs before making its decision.  Moreover, Collins did not object to any alleged delict in the trial court's procedure at the time of the ruling.

Numerous jurisdictions have found that photos are not inadmissible merely because they are gruesome, especially where, as here, the photos simply mirror the unfortunate reality of the case. *See* M.C. Dransfield, Annotation, *Admissibility of Photograph of Corpse in Prosecution for Homicide or Civil Action for Causing Death*, 73 A.L.R.2d 769 (1960 & Later Case Serv. 2013) (collecting cases involving death photos). As one court has stated, "The law is well settled that the mere fact that a photograph is gruesome is not a reason for its non admission." *State v. Ernst*, 114 A.2d 369, 373 (Me. 1955).

Moreover, the standard is not simply whether the evidence is prejudicial; rather, the standard under Rule 403, SCRE is whether there is a danger of *unfair* prejudice that *substantially* outweighs the probative value of the evidence. Where the State had the burden of proving the elements of the offenses charged and there were no eyewitnesses to the incident resulting in the victim's death, the photos here provided concrete evidence as to what transpired on that fateful day. We particularly note the photos were taken *before* the autopsy was conducted as a means to document the extent and nature of the victim's injuries. Thus, they show the unaltered condition of the victim, not any additional wounds that could have been made to the body by the pathologist in performing his examination.

These are not ordinary dog bites with which most jurors would ever be familiar. Even the pathologist stated he felt compelled to document the injuries prior to the start of the autopsy because he had never come across a situation this extreme. Since there was no one else present at the time of the event, the photos aided the jury in evaluating the testimony offered by both the State and the defendant, especially as to determining the dangerous propensities of the dogs and whether or not Collins's conduct was criminally reckless.

In *Turnipseed v. State*, 367 S.E.2d 259 (Ga. Ct. App. 1988), the Court of Appeals of Georgia considered a case in which a four-year-old was mauled by the defendant's pitbull terriers. The court held a jury could find that the defendant's conduct of leaving the dogs unguarded, along with his knowledge of past incidents involving the dogs, constituted reckless conduct supporting a charge of involuntary manslaughter. *Id.* at 261. In doing so, the court rejected the defendant's assertion that the trial court's "admission of five pre-autopsy photographs of the victim lying on the autopsy table" was error because the photos "were irrelevant and prejudicial." *Id.* at 262. The court stated:

> The photographs were not devoid of probative value because they showed the nature of the attack on the victim. From observation of the wounds of the victim, the jury could draw conclusions about the

vicious propensities of the animals and weigh this in light of the other evidence about the dogs to determine whether or not Turnipseed's conduct regarding them was criminally reckless.

*Id.* at 262-63; *cf. State v. Holder*, 382 S.C. 278, 290-91, 676 S.E.2d 690, 697 (2009) (stating "[a]lthough the photos were graphic, the facts in this case were graphic" and holding the trial court properly exercised its discretion in admitting autopsy photos of the child victim as they corroborated the pathologist's testimony and aided the jury in understanding that testimony); *State v. Edwards*, 194 S.C. 410, 412, 10 S.E.2d 587, 588 (1940) (holding, in a murder prosecution, that the trial court did not abuse its discretion in admitting a graphic photo of the victim's decomposed body where "everything depicted by the photograph was . . . testified to in detail by the witnesses").

## B. Harmless Error

Although we find no abuse of the trial court's broad scope of discretion here, we further find any alleged error would be harmless beyond a reasonable doubt. *See State v. Wise,* 359 S.C. 14, 596 S.E.2d 475 (2004) (stating both error and probable prejudice must be shown to warrant reversal).

The harmless error rule generally provides that an error is harmless beyond a reasonable doubt if it did not contribute to the verdict obtained. *Arnold v. State*, 309 S.C. 157, 420 S.E.2d 834 (1992). "To say that an error did not 'contribute' to the ensuing verdict is not, of course, to say that the jury was totally unaware of that feature of the trial . . . ." *Id.* at 166, 420 S.E.2d at 838. Rather, "[t]o say that an error did not contribute to the verdict is . . . to find that error unimportant *in relation to everything else the jury considered on the issue in question*, as revealed in the record." *Id.* at 166, 420 S.E.2d at 839 (citation omitted) (emphasis added).

"No definite rule of law governs this finding; rather, the materiality and prejudicial character of the error must be determined from its relationship to the entire case." *State v. Mitchell*, 286 S.C. 572, 573, 336 S.E.2d 150, 151 (1985). "In applying the harmless error rule, the court must be able to declare the error had little, if any, likelihood of having *changed the result* of the trial and the court must be able to declare such belief beyond a reasonable doubt." *State v. Watts*, 321 S.C. 158, 165, 467 S.E.2d 272, 277 (Ct. App. 1996) (emphasis added) (citing *Chapman v. California,* 386 U.S. 18 (1967))).

Another description frequently cited is that error "is harmless where a defendant's guilt has been conclusively proven by competent evidence such that no

other rational conclusion can be reached." *State v. Bryant*, 369 S.C. 511, 518, 633 S.E.2d 152, 156 (2006); *see also* 5 Am. Jur. 2d *Appellate Review* § 659 (2007) ("The United States Supreme Court has recognized that although the harmless error inquiry is entirely distinct from a sufficiency of the evidence inquiry, this does not mean that overwhelming evidence of guilt is irrelevant." (citing *United States v. Lane*, 474 U.S. 438 (1986))).

We hold there was overwhelming evidence presented of Collins's guilt as to the charges of (1) having an unrestrained, dangerous animal that attacked and injured a human being, and (2) involuntary manslaughter. The undisputed evidence was that Collins's dogs were unattended and they were not confined, as there were no fences, leashes, dog pens, or chains used to restrain them. In addition, other evidence showed Collins's dogs attacked, killed, and partially ate the ten-year-old victim in this case, and they also attacked one of the neighborhood boys who happened upon the scene soon thereafter and bit him on the neck. Lastly, there was evidence that Collins was aware of his animals' dangerous propensities, as the dogs, the largest of whom weighed 47 and 44 pounds, had previously exhibited overt acts of aggression towards people in the neighborhood while Collins was present. In light of the foregoing, a jury could not rationally conclude anything other than that Collins had violated the law governing unrestrained dangerous animals and was criminally negligent in the death of the victim. *See generally State v. Powell*, 446 S.E.2d 26 (N.C. 1994) (affirming a conviction for involuntary manslaughter where the jury found the defendant guilty based on the defendant's culpable negligence in leaving his dogs, two Rottweilers, unattended and unrestrained, and the dogs mauled the victim).

## IV. CONCLUSION

We conclude the trial court did not abuse its discretion in admitting the pre-autopsy photos. Consequently, we reverse the decision of the Court of Appeals.

**REVERSED.**

**TOAL, C.J., concurs. KITTREDGE, J., concurring in a separate opinion in which HEARN, J., concurs. PLEICONES, J., dissenting in a separate opinion.**

**JUSTICE KITTREDGE:**  I concur in result.  In my judgment, the admission of the autopsy photographs was clear error.  The primary, if not sole, purpose of these horrific photographs was to inflame the passions of the jury.  The detailed and graphic testimony of the pathologist was more than sufficient to enable the State to establish the elements of the offense.  I agree with Justice Pleicones that these challenged photographs far exceed "the outer limits of what our law permits a jury to consider."  *State v. Torres*, 390 S.C. 618, 624, 703 S.E.2d 226, 229 (2010).  I fully understand that there are circumstances where autopsy photographs are relevant and that the relevance of the photographs is not substantially outweighed by the danger of unfair prejudice.  *See* Rules 402, 403, SCRE.  But this is not such a case.  I nevertheless believe the error was harmless for the reasons set forth in the majority opinion.  I note this case was tried in 2009, prior to our decision in *Torres*, where we expressed our concern over the State's seeming practice of seeking admission of highly prejudicial and inflammatory autopsy photographs.

**HEARN, J., concurs.**

**JUSTICE PLEICONES:** I respectfully dissent, and would affirm the well-reasoned opinion of the court of appeals. I agree with the court of appeals that any minimal probative value of the admitted photographs was substantially outweighed by the danger of unfair prejudice and that their admission violated Rule 403, SCRE. In my opinion, the prejudice to Collins from the admission of these photographs requires reversal.

This Court recently addressed to the bench and bar our concern over the admission of gruesome photographs in *State v. Torres*, 390 S.C. 618, 703 S.E.2d 226 (2010), where we observed:

> Although we affirm the admission of the photographs, we take this opportunity to address an area of growing concern to this Court. The photographs at issue in this case, while admissible, are at the outer limits of what our law permits a jury to consider. Moreover, the State also sought to introduce evidence in the form of an autopsy dissection photo at trial, which the trial judge wisely excluded. Today, we strongly encourage all solicitors to refrain from pushing the envelope on admissibility in order to gain a victory which, in all likelihood, was already assured because of other substantial evidence in the case.

> *Id.* at 624, 703 S.E.2d at 229.[5]

In my judgment, the majority has today approved the admission of evidence that far exceeds ". . . the outer limits of what our law permits a jury to consider." *Id.* In my opinion, the only way we can educate the bench and bar as to that which is and is not beyond the pale is to publish these horrific photographs with our opinion.

I would affirm the court of appeals.

---

[5] Photographs 31 to 35 at issue here are at least as disturbing as the autopsy dissection photo in *Torres*.