742 S.E.2d 21

**The STATE, Respondent,**

v.

**Alonza DENNIS, Appellant.**

**Appellate Case No. 2011–192370.**

**No. 5111.**

Court of Appeals of South Carolina.

Heard March 5, 2013.

Decided April 3, 2013.

Rehearing Denied May 23, 2013.

628

Appellate Defender LaNelle Cantey DuRant, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Chief Deputy Attorney General John W. McIntosh, Senior Assistant Deputy Attorney General Salley W. Elliott, Senior Assistant Attorney General Harold M. Coombs, Jr., and Assistant Attorney General Julie Kate Keeney, all of Columbia; and Solicitor Scarlett Anne Wilson, of Charleston, for Respondent.

PER CURIAM.

A jury convicted Alonza Dennis of assault and battery with intent to kill (ABWIK) and possession of a firearm during the commission of a violent crime. He appeals, arguing the trial court erred in (1) admitting testimony that he offered to sell a purportedly stolen gun to buy crack cocaine shortly before the shooting; (2) refusing to charge the jury on assault and battery of a high and aggravated nature (ABHAN); (3) sentencing him to life without parole (LWOP); and (4) admitting his two written statements into evidence. We affirm.

## FACTS

On June 22, 2009, Dennis fired five shots at Moses Alford. Three of the bullets struck and injured Alford. Dennis was arrested nearby and charged with trespass. Later, a grand jury indicted him for ABWIK, attempted armed robbery, and possession of a firearm during the commission of a violent

crime. He was convicted of ABWIK and the possession charge.

## I. The State's Case

The State presented evidence that on the day of the shooting, La Seto "Quan" Gibson, Kaylab Wright, and Trevor Gibbs arranged to meet Alford, a clothing merchant from Georgetown, and buy clothes from him as he traveled through McClellanville. They encountered Dennis at the local Kangaroo convenience store and gave him a ride to Gibson's house. Gibbs testified that although Dennis was quiet when they picked him up, he became angry when they reached Gibson's house. He recalled Dennis producing a revolver and offering to sell it for fifty dollars so he could buy some crack cocaine. After no one agreed to buy the gun, Dennis, overhearing a conversation between Gibson and Alford, suggested robbing Alford.

When Gibson, Wright, and Gibbs departed to meet Alford, they left Dennis behind. However, Gibson's grandfather gave Dennis a ride back to the Kangaroo store. Dennis joined the other men in Gibson's car. After Alford arrived, Gibson suggested they move their meeting to another location in McClellanville. Alford declined. Wright looked through Alford's products, disparaged them, and returned to Gibson's car. While Gibson discussed potential purchases with Alford, Dennis approached Alford, told him to "give me everything," and shot him. Alford suffered bullet wounds in his arm, leg, and back.[1]

Alford ran toward the store as Wright and Gibbs sped away, leaving Gibson and Dennis behind. Dennis fled on foot across the highway and through the woods to a body shop, then ran through a residential area, chased by a state constable and a K–9 unit until his arrest. Officers detected gunshot residue on his hand and found a gun near where they arrested him. Once in custody, Dennis invoked his right to remain silent.

---

1. Alford explained he carried two guns in his car, along with his concealed weapons permit. Suspicious of the men, he had moved one of his guns into the waistband of his pants. He was reaching for his gun when Dennis shot him.

However, he later gave conflicting written statements to the police on June 22 and 29, 2009.

Dennis objected to evidence concerning his statements and testimony purportedly establishing his motive for shooting Alford. He argued Gibbs's testimony was more prejudicial than probative because motive was not an element of the crimes charged, and thus, his motive for shooting Alford was irrelevant. Furthermore, he contended the challenged testimony was irrelevant because no other evidence suggested he was under the influence of drugs, and he was not charged with possessing a stolen gun. Finding Gibbs's testimony established a motive for the shooting and would rebut Dennis's very different account of how he came into possession of the gun, the trial court admitted the testimony into evidence.

## II. Dennis's Defense

According to Dennis, on the day of the shooting, he went to the Kangaroo store in the hope of catching a ride to see a friend who lived near Gibson. After arriving at the right road,[2] Dennis began walking toward his destination. As he passed Gibson's house, the men called him over. Gibson and Wright, whom Dennis testified frightened him, were planning a robbery. Despite experiencing misgivings, Dennis did not refuse to participate for fear the men would attack him. After Gibson told Wright "you don't want to use [Dennis]," the men left him at Gibson's house. Dennis then decided to return to the Kangaroo and find a ride home. Gibson's grandfather drove him to the store.

Once at the store, Dennis again saw Gibson and Wright, and they invited him to join them. After he entered their car, he noticed a handgun on the back seat. Gibson and Wright instructed him to pick up the gun. They pulled next to Alford's car, and Dennis, Gibson, and Wright exited the car. With the gun in his pocket, Dennis stood and watched as Gibson and Wright engaged Alford in a discussion about his wares.

Dennis heard Gibson tell Alford, "Give me your clothes and your money." According to Dennis, Alford immediately ran

---

2. Dennis denied that Gibson, Wright, and Gibbs gave him the ride.

forty to forty-five feet away and pulled up his sweatshirt, exposing his own gun. Seeing Alford reaching for his gun, Dennis stated he "picked up [Gibson's and Wright's gun], took it out, and aimed, pointed, like, with my hand, and fired, to keep him from shooting." Dennis stated he aimed beside Alford and shot in self-defense, intending only to scare Alford. He denied realizing the bullets he had fired had hit Alford.

With regard to the discrepancies between his statements, Dennis explained he had not told the police the whole story at first because he was "scared of being called a snitch," and he knew that snitches got hurt or killed. When he gave the June 29, 2009 statement, he believed the police "kn[e]w everything already," but he was still afraid of Gibson, who by then was in the same jail as Dennis.

## III. Jury Matters

After the close of evidence, Dennis requested that the trial court instruct the jury on ABHAN as a lesser-included offense of ABWIK, arguing the shooting occurred "under a heat of passion and sudden provocation" and without malice. The trial court denied his request, agreeing with the State's contention that the use of a gun implied malice. The trial court charged the jury:

> Malice can be inferred from conduct showing a total disregard for human life.... If the facts are proven beyond a reasonable doubt sufficient to raise an inference of malice to your satisfaction, this inference would simply be an evidentiary fact to be considered by you along with other evidence of the case; and you may give it the weight you decide it should receive.

The jury convicted Dennis of ABWIK and possessing a firearm during the commission of a violent crime but found him not guilty of attempted armed robbery and the lesser-included offense of attempted strong-arm robbery. After the trial court dismissed the jury, Dennis moved for a new trial on the basis of the failure to charge ABHAN. The trial court denied his motion. This appeal followed.

## STANDARD OF REVIEW

In criminal cases, the appellate court sits to review errors of law only and is bound by the factual findings of the

circuit court unless clearly erroneous. *State v. Wilson*, 345 S.C. 1, 5–6, 545 S.E.2d 827, 829 (2001). "An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law." *State v. Pagan*, 369 S.C. 201, 208, 631 S.E.2d 262, 265 (2006).

## LAW/ANALYSIS

### I. Gibbs's Testimony

Dennis asserts the trial court erred in admitting Gibbs's testimony that Dennis offered to sell a stolen gun to buy crack cocaine shortly before the shooting. We disagree.

The admission or exclusion of evidence is a matter within the trial court's sound discretion, and an appellate court may disturb a ruling admitting or excluding evidence only upon a showing of "a manifest abuse of discretion accompanied by probable prejudice." *State v. Douglas*, 369 S.C. 424, 429, 632 S.E.2d 845, 847–48 (2006).

Evidence of other acts may "be admissible to show motive, identity, the existence of a common scheme or plan, the absence of mistake or accident, or intent." Rule 404(b), SCRE. Under the res gestae theory, "evidence of other bad acts may be an integral part of the crime with which the defendant is charged or may be needed to aid the fact finder in understanding the context in which the crime occurred." *State v. Owens*, 346 S.C. 637, 652, 552 S.E.2d 745, 753 (2001), *overruled on other grounds by State v. Gentry*, 363 S.C. 93, 106, 610 S.E.2d 494, 501 (2005); *see also State v. Gilmore*, 396 S.C. 72, 83 n. 9, 719 S.E.2d 688, 694 n. 9 (Ct.App.2011) (discussing the significance of res gestae in South Carolina law and its relation to Rule 404(b)). Our supreme court has adopted the reasoning set forth by the Fourth Circuit Court of Appeals:

> One of the accepted bases for the admissibility of evidence of other crimes arises when such evidence furnishes part of the context of the crime or is necessary to a full presentation of the case, or is so intimately connected with and explanatory of the crime charged against the defendant and is so much a part of the setting of the case and its environment that its proof is appropriate in order to complete the story of the crime on trial by proving its immedi-

ate context. . . . And where evidence is admissible to provide this full presentation of the offense, (t)here is no reason to fragmentize the event under inquiry by suppressing parts of the res gestae. As the Court said in *United States v. Roberts*, 548 F.2d 665, 667 [(6th Cir.1977)], cert. denied, 431 U.S. 920, 97 S.Ct. 2188, 53 L.Ed.2d 232[,] "(t)he jury is entitled to know the 'setting' of a case. It cannot be expected to make its decision in a void without knowledge of the time, place and circumstances of the acts which form the basis of the charge."

*United States v. Masters*, 622 F.2d 83, 86 (4th Cir.1980) (internal citations, some quotation marks, and footnotes omitted); *see, e.g., State v. Adams*, 322 S.C. 114, 122, 470 S.E.2d 366, 371 (1996).

 Nonetheless, evidence considered for admission under the res gestae theory must satisfy the requirements of Rule 403 of the South Carolina Rules of Evidence. *See* Rule 403, SCRE ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."). "Unfair prejudice does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest decision on an improper basis." *State v. Gilchrist*, 329 S.C. 621, 630, 496 S.E.2d 424, 429 (Ct.App.1998) (quotation marks and citations omitted). "All evidence is meant to be prejudicial; it is only *unfair* prejudice which must be [scrutinized under Rule 403]." *State v. Lee*, 399 S.C. 521, at 529, 732 S.E.2d 225, at 229 (2012) (alteration and emphasis in original; quotation marks and citations omitted).

 We affirm, finding the trial court did not abuse its discretion in admitting Gibbs's testimony, which established part of the res gestae of the crime. Despite Dennis's impassioned argument on appeal that his motive for shooting Alford was irrelevant to the charges against him, the question "why" pervades the record on appeal. As a result, the challenged evidence was "needed to aid the fact finder in understanding the context in which the crime occurred." *See Owens*, 346

S.C. at 652, 552 S.E.2d at 753. Both the State and Dennis offered the jury explanations for the shooting in their opening statements. According to the State, "Alonza Dennis want[ed] some money, and Alonza Dennis ha[d] a gun to sell to get that money," but when he was unable to sell the gun, he turned to robbery. On the other hand, Dennis painted a very different picture, of a "simple man" who fell in with a band of thieves, then became too "fearful for his life" to run away from the robbery. The parties threaded their respective explanations through their evidence and their closing arguments.

In this case, the challenged testimony "furnishe[d] part of the context of the crime." *See Masters*, 622 F.2d at 86 (citation and quotation marks omitted). The State argued for the admission of Gibbs's testimony on two bases. First, it pointed out the parties disputed whether Dennis brought the gun along or received it from the other men. Second, the State sought to advance its theory of why the four men would rob Alford, namely, that a hyperactive Dennis spearheaded the robbery as a means to get money to buy crack cocaine. Gibbs answered the key questions "how" and "why" in the State's case, just as Dennis answered those same questions in his defense. Accordingly, the trial court did not err in admitting Gibbs's testimony.

## II. ABHAN Charge

■ Next, Dennis asserts the trial court erred in refusing to charge the jury on ABHAN despite his testimony he intended to scare, not shoot, Alford. We disagree.

■ Generally, "the trial court is required to charge only the current and correct law of South Carolina." *Sheppard v. State*, 357 S.C. 646, 665, 594 S.E.2d 462, 472 (2004). To warrant reversal, a trial court's refusal to give a requested jury instruction "must be both erroneous and prejudicial to the defendant." *State v. Brown*, 362 S.C. 258, 262, 607 S.E.2d 93, 95 (Ct.App.2004). The evidence presented at trial determines the law to be charged to the jury. *Id.* at 261–62, 607 S.E.2d at 95.

■ "A trial [court] is required to charge a jury on a lesser included offense if there is evidence from which it could be inferred that a defendant committed the lesser offense

rather than the greater." *State v. Drafts*, 288 S.C. 30, 32, 340 S.E.2d 784, 785 (1986).

ABWIK is "an unlawful act of a violent nature to the person of another with malice aforethought, either express or implied," and "comprises all the elements of murder except the death of the victim." *State v. Wilds*, 355 S.C. 269, 275, 584 S.E.2d 138, 141 (Ct.App.2003) (citations omitted). ABWIK requires at least a general intent to kill, which the jury may infer from "the use of a dangerous or deadly weapon in a manner reasonably calculated to cause death or great bodily harm." *State v. Foust*, 325 S.C. 12, 16 n. 4, 479 S.E.2d 50, 52 n. 4 (1996), citing 41 C.J.S. *Homicide* § 179. "[T]he manner in which the instrument was used, the purpose to be accomplished, and the resulting injuries may also prove intent." *State v. Coleman*, 342 S.C. 172, 176, 536 S.E.2d 387, 389 (Ct.App.2000).

Under the common law,[3] ABHAN "requires an unlawful act of violent injury accompanied by circumstances of aggravation," which may include "the use of a deadly weapon, the infliction of serious bodily injury, [or] the intent to commit a felony." *Coleman*, 342 S.C. at 176, 536 S.E.2d at 389. "An ABHAN charge is appropriate when the evidence demonstrates the defendant lacked the requisite intent to kill." *Id.* Our supreme court has recognized "the circumstances that give rise to ABHAN may also give rise to an inference of malice. Thus, a defendant may be convicted of ABHAN regardless of whether malice is present." *State v. Fennell*, 340 S.C. 266, 275, 531 S.E.2d 512, 517 (2000).

We find no evidence adduced at trial "mitigate[s Dennis's] general intent to kill,"[4] and we affirm. As our courts have recognized, the element that distinguishes AB-WIK from ABHAN is not malice but an intent to kill. *Id.* at

---

3. ABHAN was codified in South Carolina Code subsection 16-3-600(B)(1) (Supp.2012) by the Omnibus Crime Reduction and Sentencing Reform Act of 2010, which became effective after the date of the offense in this case. *See* Act No. 273, 2010 S.C. Acts 1947-48, 2038.

4. *See Coleman*, 342 S.C. at 177, 536 S.E.2d at 390 (finding Coleman's assertion that he "panicked," by itself, could not mitigate the general intent to kill he demonstrated when he voluntarily shot his victim in the head).

275, 531 S.E.2d at 517; *State v. Tyler,* 348 S.C. 526, 530–31, 560 S.E.2d 888, 890 (2002); *Coleman,* 342 S.C. at 176, 536 S.E.2d at 389. In convicting an accused of ABWIK, the jury may infer his intent to kill from evidence concerning his use of a deadly weapon "in a manner reasonably calculated to cause death or great bodily harm," his purpose, and the injuries he caused. *Foust,* 325 S.C. at 16 n. 4, 479 S.E.2d at 52 n. 4.

We find *Coleman* instructive. Coleman entered a restaurant at closing time, pointed his gun at an employee, and demanded money. 342 S.C. at 174, 536 S.E.2d at 388. When the employee did not comply quickly enough, Coleman raised his gun toward the man's head and shot him. *Id.* Coleman later explained to the police that he "got scared and started to run and heard a shot." *Id.* at 175, 536 S.E.2d at 388. Finding no evidence existed to support a charge of ABHAN, this court affirmed the trial court's decision. *Id.* at 178, 536 S.E.2d at 390.

The accused's actions in shooting the victim and the resulting injuries figured prominently in our decision in *Coleman.* We stated, "Coleman's manner in using the weapon—pointing the gun at Victim and then deliberately raising the gun to aim at Victim's head just before he fired—could have only been reasonably calculated to kill or cause great bodily harm to Victim. Moreover, the resulting wound was near-fatal." *Id.* at 177, 536 S.E.2d at 389–90. The same analysis applies here. Although Dennis did not point his gun at Alford's head, he pointed it at Alford, who had run forty to forty-five feet away. No evidence suggested Alford drew his gun before Dennis shot him. All accounts of the shooting confirmed Dennis pointed his gun at Alford, not in the air. Moreover, Dennis fired five shots, wounding Alford in the arm, leg, and back.

Next, we found Coleman's assertion that he "panicked" could not mitigate the general intent to kill he demonstrated by shooting his victim in the head. *Id.* at 177, 536 S.E.2d at 390. Dennis's explanation that he fired at Alford five times to "scare" him is even less convincing as a mitigating factor, particularly in view of the fact that three of the shots hit Alford, one of them in the back. Accordingly, we affirm the trial court's refusal to charge ABHAN.[5]

---

5. Complicating both the trial court's and this court's evaluation of this issue is Dennis's improper argument for an ABHAN charge because the

## III. Remaining Issues

We affirm the trial court's decisions on Dennis's remaining issues pursuant to Rule 220(b), SCACR, and the following authorities:

1. As to the LWOP sentence: *State v. Tennant*, 394 S.C. 5, 17, 714 S.E.2d 297, 303 (2011) ("Statutory interpretation is a question of law."); *State v. Osborne*, 202 S.C. 473, 480, 25 S.E.2d 561, 564 (1943) (reserving questions of law to the trial judge, not the jury); S.C.Code Ann. §§ 16–3–651(h), –655(A) (2003 & Supp.2012) (stating a person who engages in sexual intercourse "with a victim who is less than eleven years of age" commits first-degree criminal sexual conduct with a minor); S.C.Code Ann. § 17–25–45 (Supp.2012) (requiring that a person convicted of a most serious offense receive a sentence of LWOP (1) if he already has one or more prior convictions for a most serious offense or an "out-of-state conviction for an offense that would be classified as a most serious offense" in South Carolina or (2) if he already has two or more prior convictions for serious offenses, and classifying ABWIK and criminal sexual conduct with a minor as most serious offenses).

2. As to the admission of Dennis's June 22, 2009 statement: *Miranda v. Arizona*, 384 U.S. 436, 478–79, 86 S.Ct. 1602, 1630 [16 L.Ed.2d 694] (1966) (describing the procedural safeguards law enforcement must employ to ensure an accused receives notice of his rights and to ensure the exercise of his right to remain silent "will be scrupulously honored"); *Michigan v. Mosley*, 423 U.S. 96, 104, 96 S.Ct. 321, 326 [46 L.Ed.2d 313] (1975) (predicating "the admissibility of statements obtained after the person in custody has decided to remain silent ... under Miranda on whether his right to cut off questioning was scrupulously honored" (quotation marks

---

shooting "occurred under a heat of passion and sudden provocation." Our courts have repeatedly held the elements of ABHAN do not include action in the heat of passion upon sufficient legal provocation, and to insert that language creates a confusing and improper analogy to voluntary manslaughter. *State v. Heyward*, 350 S.C. 153, 157, 564 S.E.2d 379, 381 (Ct.App.2002); *accord State v. Pilgrim*, 320 S.C. 409, 416, 465 S.E.2d 108, 112 (Ct.App.1995), *aff'd as modified*, 326 S.C. 24, 482 S.E.2d 562 (1997).

omitted)); *State v. Benjamin*, 345 S.C. 470, 476–77, 549 S.E.2d 258, 261 (2001) (adopting the five *Mosley* factors for determining whether law enforcement scrupulously honored an accused's right to terminate questioning, and finding those "factors are not exclusively controlling" but, rather, "provide a framework for determining whether, under the circumstances, an accused's right to silence was scrupulously honored").

3. As to the admission of Dennis's June 29, 2009 statement, which Dennis claimed was coerced: *State v. Corley*, 318 S.C. 260, 263, 457 S.E.2d 1, 3 (Ct.App.1995) (noting "an issue raised to but not ruled on by the trial court is not preserved for review") (citing *Talley v. S.C. Higher Educ. Tuition Grants Comm.*, 289 S.C. 483, 347 S.E.2d 99 (1986)).

## CONCLUSION

We find Gibbs's testimony provided part of the context of Dennis's shooting of Alford. As a result, we find the testimony was both relevant and admissible under the res gestae theory. Moreover, we find Dennis suffered no unfair prejudice from its admission. Therefore, the trial court did not abuse its discretion in admitting Gibbs's testimony.

Next, we find the evidence shows Dennis demonstrated a general intent to kill when he fired the gun five times at Alford, hitting him three times. We further find Dennis presented no evidence to reduce, mitigate, excuse, or justify the shooting. Consequently, the trial court did not err in refusing to charge ABHAN.

Finally, we affirm the trial court's decisions concerning Dennis's remaining issues in accordance with the authorities identified above.

**AFFIRMED.**

FEW, C.J., GEATHERS, J., and CURETON, A.J., concur.