758 S.E.2d 730

**The STATE, Respondent,**

v.

**Frankie Lee McGEE, Appellant.**

**Appellate Case No. 2011–197606.**

**No. 5227.**

Court of Appeals of South Carolina.

Heard Sept. 10, 2013.

Decided April 30, 2014.

Rehearing Denied June 19, 2014.

Appellate Defender Kathrine Haggard Hudgins, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Chief Deputy Attorney General John W. McIntosh, Senior Assistant Deputy Attorney General Donald J. Zelenka, Assistant Attorney General J. Anthony Mabry, and Solicitor Daniel Edward Johnson, all of Columbia, for Respondent.

KONDUROS, J.

In this criminal case, Frankie Lee McGee appeals his convictions of murder and burglary, arguing the trial court erred in admitting identification testimony based on a single photo lineup, as it was unduly suggestive and inherently unreliable. He also contends the trial court erred in admitting evidence of the theft of a vehicle as part of the res gestae of the murder. We affirm.

**FACTS**

On the night of May 3, 2009, Temika Ashford was visiting Reverend Tryon Eichelberger at his home in Columbia. They

heard a noise in another part of the home, and Eichelberger went to investigate. Ashford heard Eichelberger ask, "[H]ow did you get in here?" and then a "commotion" and "hollering." Because Ashford was afraid, she left the home, got in her car, and drove away. She drove around the block, and when she could not reach Eichelberger by phone, she returned to his house. She saw a husky man with a potbelly and receding hairline standing on the porch. He was dressed in a white shirt and jeans, wearing white gloves, and holding a metal pipe. She called 911, left the house, and drove down Farrow Road to wait on the police. While she was waiting, she noticed the man she had seen on the porch walking along the road, no longer carrying the pipe nor wearing the gloves. Once the police arrived at the home, Ashford returned there.

Officer Chauncey Duckett of the Columbia Police Department was dispatched to the scene. On his way there, while traveling on Farrow Road, he saw a light-skinned black man walking, wearing a white or light gray t-shirt and jeans. Once at the scene, he found Eichelberger lying on the floor bleeding heavily. Eichelberger's skull was cracked, he had a brain injury, and he lost a lot of blood. He died three months later as a result of his injuries. The police determined a metal tool had been used to pry open a side door to Eichelberger's home. Officer Duckett found a steel rod across the street from Eichelberger's home, in Larry Harp's yard. Officer Duckett also found a pair of white tube socks next to a light pole about twenty-five to thirty yards from the steel rod in the direction of Farrow Road. The socks and rod had blood on them. DNA analysis initially identified the blood on the items as Eichelberger's. Further testing revealed McGee's DNA inside the socks as well. The rod was consistent with the tool marks found at Eichelberger's home.

On the day of the attack, Harp saw a man he later identified as McGee in Eichelberger's yard at 3:00 p.m., talking on the phone and pacing. He saw him again in the yard at about 5:30 p.m. with a plate, napkin, and cup in his hand and eating, while Eichelberger worked in his garden. Harp testified McGee was wearing an athletic jersey and denim shorts and had a medium heavy build and light brown skin. Around midnight on the night of the attack, the police woke Harp because they discovered the rod in his yard. Harp informed

the police the rod was not his and he did not know how it got there. The police later determined the rod was a winch rod, which is commonly used to tighten straps on a flatbed trailer.

After Ashford gave the police a description of the man she observed on the front porch, the police began looking for the suspect. Police found two men walking together, and one of them matched the description Ashford had given. Ashford said the man looked like the person she saw but he was not wearing the same clothes. However, the man was eliminated as the perpetrator through more police investigation and DNA testing. Later, Ashford was shown a series of photographic line-ups. In them, she saw two pictures she believed looked like the suspect; one of the two pictures was of McGee. She identified McGee's picture as the one that most resembled the man she saw on Eichelberger's porch.

In March 2010, officers visited Michelle Perry, who was a dispatcher with the cab company at which Eichelberger had worked. Eichelberger held church services in a building attached to the cab company's office. Officers showed Perry a picture of McGee and asked if she recognized him. She told them she had seen him two different times about a year before Eichelberger was attacked. The first time she saw him, he came to one of Eichelberger's church services too early one morning and waited about twenty-five minutes outside the office. She saw him again a few days later when he returned for a Bible study.

On May 2, 2009, the day before Eichelberger was attacked, a red Peterbilt tractor-trailer truck was stolen from a business in Camden, where McGee lived. The truck was found the following day about one mile from Eichelberger's home. The theft was recorded by video surveillance, which was later broadcast on local news programs. Officer Sandra Thomas of the Columbia Police Department, McGee's sister, saw the video, recognized McGee, and contacted Crime Stoppers' anonymous tip line. The owner of the truck testified it was used to haul a flatbed trailer and would have contained a winch bar in its tool box.[1] Police learned McGee had a

---

1. An inventory was never performed to determine if the winch rod was missing from the truck.

commercial license to operate a tractor trailer that could pull a flatbed trailer, like the one stolen.

On March 17, 2010, officers interrogated McGee while he was incarcerated on an unrelated offense. McGee denied attacking Eichelberger but admitted he had been in that area of Columbia that night. He also said he had gone by Eichelberger's house that day and been on the porch of the house. He told the police that due to an athlete's foot condition, he had taken his socks off while in the area and left them by a dumpster at a store. He then said he left the socks by a light pole. McGee denied stealing the truck from Camden but said he moved a red Mack tractor-trailer truck [2] while in Columbia. McGee told police he did not know what a winch rod was. He also admitted he had told his wife that after a drug dealer pointed a pistol at him, he hit the drug dealer with it on the night of Eichelberger's attack. The police were unable to locate the drug dealer McGee said that he hit.

McGee was indicted for murder and first-degree burglary. Before trial, McGee moved to exclude the evidence regarding the theft of the truck in Camden. The trial court found the evidence was admissible as part of the res gestae of the murder. At trial, McGee moved to suppress the in-court identification by Perry, arguing the identification procedure was unduly suggestive. After conducting a *Neil v. Biggers*[3] hearing, the trial court denied the motion to suppress. The jury convicted him of both charges, and the trial court sentenced him to life imprisonment for murder and thirty years' imprisonment for the burglary. This appeal followed.

**STANDARD OF REVIEW**

"In criminal cases, the appellate court sits to review errors of law only." *State v. Baccus*, 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006). Thus, an appellate court is bound by the trial court's factual findings unless they are clearly erroneous. *Id.* "The admission or exclusion of evidence is a matter within the trial court's sound discretion. . . ." *State v. Dennis*, 402 S.C. 627, 635, 742 S.E.2d 21, 25 (Ct.App.2013), *cert.*

---

2. Peterbilt and Mack are both makers of trucks that are used to pull tractor trailers.

3. 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

*pending.* "An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law." *State v. Pagan,* 369 S.C. 201, 208, 631 S.E.2d 262, 265 (2006); *see also State v. Wise,* 359 S.C. 14, 21, 596 S.E.2d 475, 478 (2004) ("The admission or exclusion of evidence is a matter addressed to the sound discretion of the trial court and its ruling will not be disturbed in the absence of a manifest abuse of discretion accompanied by probable prejudice."). "The appellate court does not re-evaluate the facts based on its own view of the preponderance of the evidence, but simply determines whether the trial judge's ruling is supported by any evidence." *State v. Wood,* 362 S.C. 520, 525, 608 S.E.2d 435, 438 (Ct.App.2004).

## LAW/ANALYSIS

### I. Identification

 McGee argues the trial court erred in admitting Perry's identification testimony based on a single photo, as it was unduly suggestive and inherently unreliable. We disagree.

The cases relied on by McGee at trial and on appeal all pertain to identifications by eyewitnesses[4] to crimes. *See, e.g., Neil v. Biggers,* 409 U.S. 188, 199–200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972) (holding the court should consider the following factors when determining the likelihood of a misidentification: (1) the witness's opportunity to view the criminal *at the time of the crime;* (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the witness's level of certainty at the confrontation; and (5) the time *between the crime and the confrontation); State v. Traylor,* 360 S.C. 74, 82, 600 S.E.2d 523, 527 (2004) (providing the same factors); *State v. Moore,* 343 S.C. 282, 288, 540 S.E.2d 445, 448 (2000) ("[A]n eyewitness identification which is unreliable because of suggestive line-up procedures is constitutionally inadmissible as a matter of law."). However, Perry was not an eyewitness to the crime. Perry's testimony related to seeing McGee a year before the attack and was for the purpose of showing that McGee knew Eichelberger. Therefore, any reliance on cases concerning the

---

4. An eyewitness is "[o]ne who personally observes an event." *Black's Law Dictionary* 667 (9th ed.2009).

admissibility of eyewitness identification is misplaced. Because McGee only challenged the admission of Perry's testimony as unduly suggestive and inherently unreliable, there is nothing for us to consider. *See State v. Beekman*, 405 S.C. 225, 235, 746 S.E.2d 483, 488 (Ct.App.2013) (noting an issue must be raised to and ruled upon by the trial court to be preserved for appellate review), *cert. pending*. Further, Perry's testimony was cumulative because McGee admitted going to the cab company office the year before in his statement to police, which was admitted into evidence at trial. Additionally, McGee admitted knowing Eichelberger. *See State v. Haselden*, 353 S.C. 190, 197, 577 S.E.2d 445, 449 (2003) (holding the admission of improper evidence is harmless when the evidence is merely cumulative to other evidence); *State v. Garris*, 394 S.C. 336, 349, 714 S.E.2d 888, 895 (Ct.App.2011) ("To warrant reversal based on the admission of evidence, the complaining party must prove both the error of the ruling and the resulting prejudice."). Therefore, we affirm the trial court's admission of Perry's identification.

## II. Res Gestae

McGee maintains the trial court erred in admitting evidence of the theft of the truck as part of the res gestae of the murder. We disagree.

"Evidence is relevant and admissible if it tends to establish or make more or less probable the matter in controversy." *State v. Wiles*, 383 S.C. 151, 158, 679 S.E.2d 172, 176 (2009) (citing Rules 401 & 402, SCRE). "The *res gestae* theory recognizes evidence of other bad acts may be an integral part of the crime with which the defendant is charged, or may be needed to aid the fact finder in understanding the context in which the crime occurred." *State v. King*, 334 S.C. 504, 512, 514 S.E.2d 578, 582 (1999). "The evidence admitted must logically relate to the crime with which the defendant has been charged." *Wiles*, 383 S.C. at 158, 679 S.E.2d at 176.

One of the accepted bases for the admissibility of evidence of other crimes arises when such evidence furnishes part of the context of the crime or is necessary to a full presentation of the case, or is so intimately connected with and explanatory of the crime charged against the defendant and

is so much a part of the setting of the case and its environment that its proof is appropriate in order to complete the story of the crime on trial by proving its immediate context or the res gestae or the uncharged offense is so linked together in point of time and circumstances with the crime charged that one cannot be fully shown without proving the other ... [and is thus] part of the res gestae of the crime charged. And where evidence is admissible to provide this full presentation of the offense, [t]here is no reason to fragmentize the event under inquiry by suppressing parts of the res gestae.

*State v. Adams*, 322 S.C. 114, 122, 470 S.E.2d 366, 370–71 (1996) (alterations in original) (internal quotation marks omitted), *overruled on other grounds by State v. Giles*, 407 S.C. 14, 754 S.E.2d 261 (2014). "When evidence is admissible to provide this full presentation of the offense, there is no reason to fragmentize the event under inquiry by suppressing parts of the res gestae." *State v. Preslar*, 364 S.C. 466, 474, 613 S.E.2d 381, 385 (Ct.App.2005) (internal quotation marks omitted). Under this theory, the temporal proximity of the prior bad act should be closely related to the charged crime. *State v. Owens*, 346 S.C. 637, 652, 552 S.E.2d 745, 753 (2001), *overruled on other grounds by State v. Gentry*, 363 S.C. 93, 610 S.E.2d 494 (2005).

"[E]vidence considered for admission under the res gestae theory must satisfy the requirements of Rule 403 of the South Carolina Rules of Evidence." *State v. Dennis*, 402 S.C. 627, 636, 742 S.E.2d 21, 26 (Ct.App.2013), *cert. pending*. Rule 403 provides that even if evidence is relevant, it "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." "This [c]ourt reviews 403 rulings pursuant to the abuse of discretion standard, and gives great deference to the trial judge's decision." *State v. Myers*, 359 S.C. 40, 48, 596 S.E.2d 488, 492 (2004).

"Unfair prejudice means an undue tendency to suggest decision on an improper basis." *Wiles*, 383 S.C. at 158, 679 S.E.2d at 176. "Unfair prejudice does not mean the

damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest decision on an improper basis." *Dennis*, 402 S.C. at 636, 742 S.E.2d at 26 (internal quotation marks omitted). "Evidence is unfairly prejudicial if it has an undue tendency to suggest a decision on an improper basis, such as an emotional one." *State v. Cheeseboro*, 346 S.C. 526, 547, 552 S.E.2d 300, 311 (2001). "All evidence is meant to be prejudicial; it is only *unfair* prejudice which must be scrutinized under Rule 403." *State v. Collins*, 398 S.C. 197, 207, 727 S.E.2d 751, 757 (Ct.App.2012) (brackets and internal quotation marks omitted), *cert. granted* August 8, 2013.

■■■ The trial court did not abuse its discretion in allowing the evidence of the theft of the truck as part of the res gestae. The trial court determined there was a sufficient nexus between the theft and the murder. It found the evidence of the truck was circumstantially intimately connected and explanatory of the crime. The trial court further found the evidence of the theft placed the discovery of the winch rod and McGee at the scene of the crime and put it all into context. It also determined the admission of the testimony regarding the theft was necessary for the State to be able to present a complete, unfragmented case. The evidence of the theft was relevant because the truck allowed McGee access to a winch rod like the one used to commit the murder and also placed him in the area around the time of the attack because the truck was found about a mile from Eichelberger's home. The theft occurred the night before the attack. The evidence of the theft of the truck was needed to show the story of the attack on Eichelberger. The unfair prejudice from the admission of evidence of the theft did not substantially outweigh the probative value. Accordingly, the trial court did not abuse its discretion in allowing the evidence of the theft.[5]

5. McGee also argues the trial court failed to analyze the prior bad act under Rule 404(b), SCRE, and that the State failed to establish the theft of the truck was admitted to show motive, identity, the existence of a common scheme or plan, the absence of mistake or accident, or intent. Because we find the trial court properly admitted the evidence as part of the res gestae, we need not address this issue. *Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal);

## CONCLUSION

Based on the foregoing, the trial court did not abuse its discretion in admitting Perry's testimony or the evidence regarding the theft of the truck. Accordingly, the trial court is

AFFIRMED.

FEW, C.J., and LOCKEMY, J., concur.

---

*State v. Wood,* 362 S.C. 520, 529, 608 S.E.2d 435, 440 (Ct.App.2004) ("Because we dispose of this issue under a res gestae analysis, we do **NOT** reach the *Lyle*/Rule 404(b) argument.").