**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Bradley Mark Corlew, Appellant.

Appellate Case No. 2021-000989

-------

Appeal From Chester County
Brian M. Gibbons, Circuit Court Judge

-------

Unpublished Opinion No. 2024-UP-408
Heard September 24, 2024 – Filed December 4, 2024

-------

**AFFIRMED**

-------

Appellate Defender Sarah Elizabeth Shipe, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Assistant Attorney General John Benjamin Aplin, both of Columbia, and Solicitor Randy E. Newman, Jr., of Lancaster, all for Respondent.

-------

**PER CURIAM:** Bradley Corlew appeals his convictions of criminal sexual conduct (CSC) with a minor in the first degree, CSC with a minor in the second degree, and incest. Corlew contends the trial court erred in (1) allowing the State to introduce

bad acts evidence pursuant to Rule 404(b), SCRE, and as part of the res gestae of the crimes alleged; (2) admitting into evidence an adolescent questionnaire wherein one of the victims identified Corlew as her abuser; (3) allowing an expert witness to describe sexually explicit photographs found on Corlew's phone; and (4) requiring Corlew to move his seating position in the courtroom in a manner that allegedly violated Corlew's constitutional right to confrontation. We affirm.

## FACTS

This case centers around Corlew's sexual abuse of two victims: Minor 1, Corlew's daughter, and Minor 2, the daughter of Corlew's girlfriend, Sarah Lacy. At the time of trial, both victims were thirteen years old. When the abuse occurred, nine children lived in the home with Corlew and Lacy. According to the State, the environment in the home was "sort of a lifestyle to normalize sexual behaviors between [Corlew and Lacy] and their sexual activities, as well as having the children join in on the sexual activities as well."

At trial, Minor 1 and Minor 2 testified in detail about the abuse they experienced in the home. Additionally, the State presented evidence of bad acts to the jury. For example, the jury watched videos of Minor 1's two forensic interviews,[1] during which she stated (1) Lacy used sex toys on Minor 1, (2) Lacy forced Minor 1 to masturbate, (3) Lacy sexually abused Minor 1's brother and on at least one occasion tried to have sex with him, and (4) Corlew and Lacy forced Minor 1's brother to watch them have sex. Minor 2, during her forensic interview, stated that (1) Corlew forced her brother to have sex with Lacy, (2) Corlew would make all the children watch while he and Lacy had sex, (3) Corlew beat Minor 2's brother when Minor 2's brother urinated on himself, (4) Corlew held her while she was forced to have sex with Minor 1's brother, (5) Corlew physically abused Lacy, and (6) two other children in the house were forced to have sex with each other. Minor 1 and Minor 2 also referenced many of these events in their testimony.

At the conclusion of the trial, the jury convicted Corlew of first-degree CSC with a minor, second-degree CSC with a minor, and incest, and the trial court sentenced him to life imprisonment, twenty years' imprisonment, and ten years' imprisonment, respectively. This appeal followed.

---

[1] During Minor 1's first forensic interview, she insisted that Corlew had nothing to do with the sexual assault she suffered and that instead, Lacy was responsible for all of it. Minor 1 recanted this account in her second interview and described Corlew's involvement.

# LAW AND ANALYSIS

## I.    Res Gestae and Rule 404, SCRE

Corlew argues the trial court erred in granting the State's pretrial motion seeking to admit several pieces of bad acts evidence pursuant to Rule 404, SCRE, and as part of the res gestae of the crimes with which Corlew was charged. We first consider whether this issue is preserved before turning to the merits of the argument.

### A. Preservation

During the pretrial phase, the trial court heard arguments on two issues:[2] (1) the State's motion to admit evidence of Corlew's bad acts through testimony and video recordings of forensic interviews with the victims, and (2) the admissibility of the video recordings under 17-23-175 of the South Carolina Code (2014).[3]

The State sought to introduce evidence that Corlew abused not only Minor 1 and Minor 2 but also their siblings. The State also attempted to introduce evidence that Corlew had physically abused Lacy. The State argued this evidence was admissible as evidence of a common scheme or plan by Corlew to "normalize daily sexual activities with all the children present and some actively participating when he required it." Furthermore, the State maintained the evidence was admissible as part of the res gestae of the crimes. Because multiple children were often abused simultaneously, the State contended, "it would tie [its] hands and be almost impossible to divvy out the type of abuse that was going on with each individual child."

Corlew argued that the State established, at best, similarity, which is not enough to qualify as a common scheme or plan. Corlew also made a Rule 403, SCRE, argument that the danger of unfair prejudice substantially outweighed the evidence's probative value. The trial court ruled in favor of the State, informing Corlew:

> [Y]ou're protected in the record right now. I'm allowing
> the State to go into that to establish what they call a

---

[2] While only the first is pertinent to this appeal, it is unclear whether counsel's later objection preserved for appellate review the first or the second issue.

[3] Section 17-23-175 governs the admissibility of an out-of-court statement by a child under twelve years of age.

common scheme and plan, but certainly you're entitled to an objection as to under a Rule 403 analysis whether it's substantially more [unfairly prejudicial than probative], and, you know, you can simply do that at trial by just noting your objection for the record to protect your client.

During the trial, the State moved to admit into evidence videos of the forensic interviews, which included some of the bad acts evidence. The trial court noted Corlew's objection for the record and overruled it.

South Carolina courts do not follow the plain error rule. *See State v. Sheppard*, 391 S.C. 415, 421, 706 S.E.2d 16, 19 (2011) ("[T]he plain error rule does not apply in South Carolina state courts."). "Instead, a party must have a contemporaneous and specific objection to preserve an issue for appellate review." *Id.* "[I]t is a litigant's duty to bring to the court's attention any perceived error, and the failure to do so amounts to a waiver of the alleged error." *State v. Geer*, 391 S.C. 179, 193, 705 S.E.2d 441, 448 (Ct. App. 2010) (quoting *S.C. Dep't of Transp. v. First Carolina Corp. of S.C.*, 372 S.C. 295, 301, 641 S.E.2d 903, 907 (2007)). However, appellate courts are to be "mindful of the need to approach issue preservation rules with a practical eye and not in a rigid, hyper-technical manner" and, thus, should not apply preservation rules in a manner that "elevat[es] form over substance to trap trial lawyers so as to prevent the appeal of a legitimate issue." *State v. Morales*, 439 S.C. 600, 609, 889 S.E.2d 551, 556 (2023).

The State argues Corlew's objection only renewed the pretrial argument that the forensic interviews were inadmissible pursuant to section 17-23-175 (governing admission of statements given by children during investigative interviews). Corlew maintains that his objection renews the pretrial argument against allowing into evidence Corlew's extrinsic bad acts. Although Corlew had the duty to bring to the trial court's attention the specific nature of his objection, we hold the question is nonetheless preserved. A contrary application of the preservation rule may be "hyper-technical" and would suppress consideration of an otherwise meritorious issue, particularly given that the trial court appears to have invited Corlew to simply note his objection for the record, which he did.

However, Corlew only renewed his objection with regard to the videos of the forensic interviews, *not* the victims' testimony. Thus, we limit our review to the bad acts that were brought in through the videos, rather than by live witness testimony, because any concerns with the testimony were not preserved.

**B. Merits**

"The [res gestae] theory of admissibility recognizes that evidence of other bad acts may be an integral part of the crime with which the defendant is charged, or may be needed to aid the fact-finder in understanding the context in which the charged crime occurred." *State v. McGee*, 408 S.C. 278, 287, 758 S.E.2d 730, 735 (Ct. App. 2014) (quoting *State v. King*, 334 S.C. 504, 512, 514 S.E.2d 578, 582 (1999)). "The evidence admitted must logically relate to the crime with which the defendant has been charged." *Id.* (quoting *State v. Wiles*, 383 S.C. 151, 158, 679 S.E.2d 172, 176 (2009)).

Further, Rule 404(b), SCRE, provides,

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible to show motive, identity, the existence of a common scheme or plan, the absence of mistake or accident, or intent.

For the common scheme or plan exception to apply, "The State must demonstrate to the trial court that there is in fact a scheme or plan common to both crimes, and that evidence of the other crime serves some purpose other than using the defendant's character to show his propensity to commit the crime charged." *State v. Perry*, 430 S.C. 24, 44, 842 S.E.2d 654, 665 (2020). "Repetition of the same act or same crime does not equal a 'plan.'" *Id.* at 41, 842 S.E.2d at 663 (quoting *State v. Perez*, 423 S.C. 491, 502, 816 S.E.2d 550, 556 (2018) (Hearn, J., concurring)). Instead, "There must be something in the defendant's criminal process that logically connects the 'other crimes' to the crime charged." *Id.*

Corlew contends that much of the bad acts evidence was unconnected to the crimes with which he was charged.

### 1. Evidence That Corlew Was Violent Towards Lacy

Beginning with the evidence that Corlew physically assaulted Lacy, we hold this evidence was introduced "for some purpose other than to show the accused is a bad person or he acted in conformity with" his bad acts. *See State v. Benton*, 338 S.C. 151, 156, 526 S.E.2d 228, 230 (2000). Specifically, this evidence, coupled with

testimony of the State's expert, was meant to explain any delay by the victims in disclosing the sexual abuse of which Corlew was accused.

The State qualified Shauna Galloway-Williams as a blind expert in the field of child sexual abuse dynamics. Galloway-Williams testified,

> So another one of the reasons that children delay disclosure is because of fear and threats. . . . And sometimes those threats are indirect in the sense--or in the case of domestic violence, that might be an indirect threat where a child is witnessing this person who may be harming them also being aggressive or hurtful to other people. And they may internalize that if I tell or if I do something then that may happen to me or--and/or this may mean that something would happen to the other person that may be harmed.

Together with this testimony, the introduction of evidence that Corlew was violent towards Lacy preempted credibility concerns caused by any delay in the victims' disclosure of the sexual abuse. Because the State did not use the evidence to prove the charged crimes were in conformity with Corlew's violence towards Lacy, we conclude that this evidence was properly admitted. *See State v. Galloway*, 443 S.C. 229, 244, 904 S.E.2d 866, 874 (2024) ("[I]t was not error for the trial court to admit the testimony about [the defendant's violence towards a third party living in the victim's home] because it is clear the State did not elicit the testimony for the purpose of demonstrating [the defendant]'s propensity to be *sexually* violent. Instead, the State offered the evidence to explain why the victim did not disclose the abuse when she was a child.").

### 2. Evidence of Abuse Towards the Other Children

Turning to the evidence related to the other children in the home, we agree with Corlew that the trial court erred in admitting the evidence. These acts did not constitute evidence of a common scheme or plan. The State used this evidence to show Corlew acted in conformity with the bad acts in committing the charged crimes.

As our supreme court stated in *Perry*,

> [A] very high percentage of sexual crimes against children are committed just like [the defendant]'s alleged crimes: by father figures, in the home, in a bedroom, beginning in the pre-pubescent years. The fact [that the defendant]'s crimes fit this general pattern does not give [the defendant] a "monopoly" on his criminal method.

430 S.C. at 40, 842 S.E.2d at 662; *cf. State v. Durant*, 430 S.C. 98, 106–07, 844 S.E.2d 49, 53 (2020) (affirming admission of bad acts evidence under Rule 404(b) because of the defendant's "particularly unique method of committing his attacks" by holding private "prayer meetings," a method the court found was "common to all the girls"). Likewise, normalization of sexual behavior is, sadly, far from a particularized criminal method in cases such as this one. The State did not identify any specific patterns by which this criminal method was unique in the present case. *Cf. State v. McClellan*, 283 S.C. 389, 392, 323 S.E.2d 772, 774 (1984) (holding bad acts evidence admissible under Rule 404(b) when the defendant's particularized plan for sexually assaulting his daughter "parallel[ed] that of her sisters: the initial attack occurred around age twelve; [the defendant] entered their room and chose one of them, who would be forced to submit; he gave to each the same explanation for his actions; and he quoted to each [a] Biblical verse").

We acknowledge that a defendant's common scheme or plan need not involve facts that are strictly unique when compared to other cases. However, more than mere similarity is required for evidence to be admissible under Rule 404(b). *See Perry*, 430 S.C. at 38–39, 842 S.E.2d at 661–62 (acknowledging similarities between a defendant's bad acts and the charged crime but noting these did not amount to a logical connection). Here, the bad acts evidence merely showed Corlew had a propensity to commit sexual crimes against Minor 1 and Minor 2. Consequently, we hold the trial court erred in admitting this evidence.

### 3. Other Bad Acts

The State suggests testimony that Lacy urinated and defecated on the floor in the house was properly admitted because it "normalize[d] sexual behavior due to the ensuing exposure of genitals and normalization of the excretion of[] fluids: urine, defecation, and ultimately [ejaculation]." We reject this "logical connection" argument. While admittedly disturbing, evidence of *Lacy's* behavior does not "reasonably tend[] to prove a material fact" of *Corlew's* charged crimes. *Perry*, 430 S.C. at 44, 842 S.E.2d at 665 (quoting *State v. Lyle*, 125 S.C. 406, 417, 118 S.E. 803, 807 (1923)). The State presented this evidence to emphasize how sexual behavior

had been normalized in the home. However, we agree with Corlew that much of the evidence had little logical connection to the crimes with which he was charged. Accordingly, we hold the trial court erred in allowing this evidence.

### 4. Res Gestae

We reject the State's argument that the above evidence was admissible as part of the res gestae of the charged crimes. "[T]he res gestae exception is necessary because 'it would be virtually impossible to prove that the accused committed the crime charged without also introducing evidence of the other acts.'" *Id.* at 69, 842 S.E.2d at 678 (Kittredge, J., dissenting) (quoting *State v. Curry*, 330 N.E.2d 720, 725 (Ohio 1975)); *see also McGee*, 408 S.C. at 287, 758 S.E.2d at 735 ("The res gestae theory recognizes evidence of other bad acts may be an integral part of the crime with which the defendant is charged, or may be needed to aid the fact-finder in understanding the context in which the crime occurred." (quoting *State v. King*, 334 S.C. 504, 512, 514 S.E.2d 578, 582 (1999))).

We are unpersuaded that the State needed the bad acts evidence to prosecute the case. Large portions of both Minor 1's and Minor 2's forensic interviews were relevant to the elements of the crimes with which Corlew was charged. A more focused presentation of the children's forensic interviews, combined with their testimony, would have been sufficient for the jury to reach a decision without the need for additional context to understand Corlew's alleged crimes.

### C. Harmless Error

Notwithstanding these admissibility errors, we hold the errors were harmless. *See State v. Bryant*, 369 S.C. 511, 518, 633 S.E.2d 152, 156 (2006) ("Error is harmless where it could not reasonably have affected the result of the trial."); *see also State v. Young*, 420 S.C. 608, 628, 803 S.E.2d 888, 899 (Ct. App. 2017) ("[T]he harmless-error doctrine recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error." (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986))).

Even if the trial court excluded all references to the other bad acts that took place in the home, the abundant remaining evidence was more than sufficient to establish Corlew's guilt beyond a reasonable doubt. Both Minor 1 and Minor 2 testified in explicit detail about instances of sexual abuse occurring "almost every

night and [every day]".  These instances were corroborated by Lacy's testimony and physical evidence from Minor 2's genital exam.  We cannot imagine that a jury faced with this evidence would fail to convict.

Thus, although the trial court erred in admitting some of the bad acts evidence, we hold the errors were harmless.

## II.    Admissibility of the Adolescent Questionnaire

Corlew argues that the trial court erred in admitting into evidence an adolescent questionnaire in which Minor 1 identified Corlew as her abuser because the questionnaire was substantially more prejudicial than probative in contravention of Rule 403, SCRE.  Specifically, Corlew maintains that the questionnaire was needlessly cumulative and the resulting prejudice was unfair because it constituted inadmissible hearsay.[4]

### A. Needlessly Cumulative

We first analyze Corlew's argument that the questionnaire was needlessly cumulative.  Rule 403 provides, "Although relevant, evidence may be excluded if its probative value is substantially outweighed . . . by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  "Cumulative evidence has repeatedly been defined to be additional evidence of the same kind to the same point."  *State v. Funderburke*, 251 S.C. 536, 540, 164 S.E.2d 309, 311 (1968).  Even if the evidence was cumulative, we disagree that it was *needlessly* cumulative.

"We review a trial court's decision regarding Rule 403 pursuant to the abuse of discretion standard and are obligated to give great deference to the trial court's judgment."  *State v. Collins*, 409 S.C. 524, 534, 763 S.E.2d 22, 28 (2014) (quoting *State v. Adams*, 354 S.C. 361, 378, 580 S.E.2d 785, 794 (Ct. App. 2003)).

In *State v. Stephens*, the defendant asserted on appeal that the trial court should have excluded a photographic lineup from evidence because it was needlessly

---

[4] Corlew does not contend that the questionnaire should have been suppressed under Rules 801 to 806, SCRE.  Instead, Corlew wants this court to conduct a hearsay analysis for the purpose of supplying the "unfair prejudice" that is required for suppression under Rule 403.

cumulative to a witness's in-court identification of the defendant. 398 S.C. 314, 320, 728 S.E.2d 68, 72 (Ct. App. 2012). This court observed that the defendant's trial strategy was to "consistently attack[] the reliability of [the witness]'s identification of [the defendant]." *Id.* at 321, 728 S.E.2d at 72. This strategy increased the probative value of the photographic lineup by making it more important, and therefore "the photos were not 'needlessly' cumulative.'" *Id.* This court consequently affirmed. *Id.*

Here, the probative value of the questionnaire outweighed its cumulative effect. At the heart of any criminal-sexual-conduct-with-a-minor case is the credibility of the witnesses, who are often the minor victims themselves. Thus, the questionnaire was probative because of its potential to support Minor 1's credibility—a central issue in Corlew's trial. As a result, we hold that the questionnaire was not *needlessly* cumulative and that the trial court acted within its discretion in overruling Corlew's objection on this point.

## B. Danger of Unfair Prejudice

Next, we consider Corlew's contention that because the questionnaire was inadmissible hearsay, the danger of unfair prejudice resulting from its admission substantially outweighed its probative value. Although Corlew objected to the admission of the questionnaire "under [Rule] 403," he did not make any arguments about hearsay. Because an "objection must be sufficiently specific to bring into focus the precise nature of the alleged error so it can be reasonably understood by the trial judge," we hold that Corlew's attempt to bootstrap a hearsay analysis into a Rule 403 analysis is unpreserved. *See* Jean Hoefer Toal et al., *Appellate Practice in South Carolina* 195 (3d ed. 2016); *see also State v. Hudgins*, 319 S.C. 233, 237, 460 S.E.2d 388, 390 (1995) (finding the appellant's objection "on the general ground that the prejudicial impact outweighed the probative value" was different from the ground raised on appeal and the issue was thus unpreserved), *overruled in part on other grounds by State v. Collins*, 329 S.C. 23, 495 S.E.2d 202 (1998)).

## III. Admissibility of Investigator Stevens's Testimony

The State qualified Investigator Paula Stevens as an expert in digital forensics. Investigator Stevens extracted photographs and videos stored in Corlew's phone and flagged those she deemed potentially relevant to law enforcement. The State sought to introduce a zip file containing the flagged photographs and videos into evidence, at which point Corlew objected, stating, "Your Honor, yes, we would object to that. We're not sure exactly what's being moved into evidence as far as what kind of

images or pictures or anything." The trial court overruled this objection. The State then elicited testimony from Investigator Stevens describing the contents of some of the flagged photographs.[5]

The next day, the parties returned to the admissibility of the photographs. Corlew stated he wished to clarify his objection "to the phone dump," claiming the photographs were irrelevant and more prejudicial than probative. He did not make any motion to strike Investigator Stevens's earlier description of the photographs, nor did he ask for any curative instructions. The trial court reviewed the photographs and held that none of the photographs were admissible under Rule 403. The State took no exception to the ruling because it felt "the testimony of [Investigator Stevens] was enough."

On appeal, Corlew contends that Investigator Stevens's testimony should have also been excluded from evidence under Rule 403. He further argues that his clarification of his earlier objection to the admission of the photographs preserved the issue for appellate review.

Contemporaneous objections are required to properly preserve an error for appellate review. *State v. Hoffman*, 312 S.C. 386, 393, 440 S.E.2d 869, 873 (1994); *see also State v. Curtis*, 356 S.C. 622, 633, 591 S.E.2d 600, 605 (2004) (finding that "counsel's objection came too late" when counsel raised no objection to an inquiry "until several pages of testimony concerning the [evidence] had been taken").

The admissibility of Investigator Stevens's testimony is not preserved for appellate review. Although Corlew raised an objection while Investigator Stevens was on the witness stand, this objection pertained to the State's desire to publish the photographs from Corlew's phone to the jury. Corlew did not object at any point during Investigator Stevens's testimony in which she described the contents of the photographs. Corlew's clarification the next day still seemingly pertained to the admission of the photographs themselves as he made no effort to bring the trial court's attention to the fact that Investigator Stevens had already described the photographs to the jury, even when the State decided these descriptions precluded the need to show the jury the photographs. Thus, we hold this issue is unpreserved.

## IV. Confrontation Clause

---

[5] Technical difficulties prevented the State from showing the jury the photographs Investigator Stevens described.

Corlew argues the trial court violated his constitutional right to confrontation by moving his seat in the courtroom prior to the testimony of the two minor victims.

After the parties made their opening statements, the trial court stated it was going to move Corlew's position in the courtroom during the testimony of Minor 1 and Minor 2. Corlew's counsel expressed concern that Corlew would be unable to see the witness box and that the witnesses would be unable to see Corlew under the proposed seating configuration. The trial court advised the parties that it would hear contemporaneous objections on the matter when the time came.

Later, before Minor 1 testified, Corlew reminded the trial court about the issue. The court replied, "From where [Corlew] was sitting[,] I don't care if [Corlew] sees, I don't want [Minor 1] to see." The State suggested that Corlew be seated "in [the] orange taped seat in the grand jury box." From this seat, Corlew would be blocked from Minor 1's view by the bench. Corlew's counsel consented to this arrangement and asked that Corlew be allowed to move immediately.

The Sixth Amendment of the United States Constitution provides for a defendant's right "to be confronted with the witnesses against him." U.S. Const. amend. VI. South Carolina's constitution contains the same right. S.C. Const. art I, § 14. The right also appears in section 17-23-60 of the South Carolina Code (2014): "Every person accused . . . shall have a right to . . . meet the witnesses produced against him face to face." Though this right has been interpreted in numerous contexts, federal jurisprudence has made clear that the clause encompasses the "literal right to 'confront' the witness at the time of trial." *California v. Green*, 399 U.S. 149, 157 (1970). This right is in part predicated on the notion that "[i]t is always more difficult to tell a lie about a person 'to his face' than 'behind his back.'" *Coy v. Iowa*, 487 U.S. 1012, 1019 (1988).

In *Coy*, the United States Supreme Court reversed a defendant's criminal conviction after holding that the state trial court violated the defendant's right to confrontation by allowing a one-way screen to be installed between the defendant and two witnesses—both thirteen-year-old girls whom he was accused of sexually assaulting. *Id.* at 1014, 1022. The screen "enable[d the defendant] dimly to perceive the witnesses, but the witnesses to see him not at all." *Id.* at 1015. The Court noted, "It is difficult to imagine a more obvious or damaging violation of the defendant's right to a face-to-face encounter. *Id.* at 1020.

In *Maryland v. Craig*, the Supreme Court further clarified that "a defendant's right to confront accusatory witnesses may be satisfied absent a physical,

face-to-face confrontation at trial *only* where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." 497 U.S. 836, 850 (1990). However, "[a] trial court *must* hear evidence and determine whether use of [the special procedure] is necessary to protect the welfare of the particular child witness who seeks to testify." *Id.* at 855 (emphasis added). The Court outlined several other required findings, including that the child witness would be traumatized by the presence of the defendant and that the emotional distress suffered by the child witness in the presence of the defendant be more than "de minimis." *Id.* at 856.

Here, the trial court made none of the findings outlined in *Craig*. The trial court appeared to be under the impression that the confrontation clause only requires that the defendant be allowed to see the witness—and not vice versa—which runs against *Coy*.[6] However, Corlew's counsel consented to Corlew's ultimate seating arrangement, and no further objection was made. Thus, we hold that any issue with Corlew's final seating arrangement was not preserved for appellate review. *See, e.g., State v. Bryant*, 372 S.C. 305, 315–16, 642 S.E.2d 582, 588 (2007) (if appellant conceded that a trial court ruling was not prejudicial, he could not assert on appeal that the ruling denied him a fair trial); *State v. Jackson*, 364 S.C. 329, 336, 613 S.E.2d 374, 377 (2005) (appellant waived any argument he had when he acquiesced the next morning and stated he would ask witness if he had administered a polygraph and "leave it at that").

## CONCLUSION

For the foregoing reasons, the trial court's order is

**AFFIRMED.**

**KONDUROS, GEATHERS, and MCDONALD, JJ., concur.**

---

[6] We are particularly concerned with the trial court's statement: "I've done [alternative seating arrangements for defendants] before, and I've done it on cases that have gone up the appellate route. I've had people turn around and look the other way."